[Civ. No. 19542.   Second Dist., Div. One.   June 24, 1953.]

MURRAY B. JONES et al., as Coexecutors, etc., Respondents, v. SUNSET OIL COMPANY (a Corporation), Appellant.

Francis B. Cobb for Appellant.

Steiner A. Larsen for Respondents.

SCOTT (Robert H.), J. pro tem.—Defendant appeals from an adverse judgment in an action for declaratory relief. Plaintiffs are coexecutors of the estate of Bessie H. Jones, deceased, and one of them is her surviving husband.

Mr. and Mrs. Jones had operated a service station at Los Angeles, California, for many years. On March 27, 1947, Mrs. Jones leased the station to defendant, Mr. Jones waiving any claim or interest therein. The lease was for a term of 10 years with right to terminate at the end of five years reserved in lessor, and option to terminate at the end of five years reserved in lessee, if it is not then in default. It required lessee to give six months' advance notice of its inten-

tion to exercise the option. Defendant gave more than a year's advance notice of its intention to exercise this option and moved out at the end of the five-year period. Plaintiffs brought this action alleging that defendant was in default and seeking a decree that defendant had no right to terminate the lease but must continue operating the station.

The lease provided for $365 monthly rental plus additional rental of one cent per gallon for gasoline sold in any month in which sales exceeded 15,000 gallons. It required that lessee make to lessor a report of sales for the previous month by the 20th day of each month accompanied by payment of the contingent additional rental. Sales, however, did not exceed 10,000 gallons in any month during the entire five-year period. Lessee promptly sent in the check for the basic rental each month but sent no report informing lessor that no more money as lessor's percentage on the sales was forthcoming and did not report the number of gallons sold each month. Lessor made no demand for such reports until the five-year period was nearly completed, and upon such demand being made, lessee reported sales to date showing the amount of gasoline sold, from which reports it appeared that no added rental was due lessor.

The trial court found that defendant was in default partly because of failure to make monthly reports of sales to lessor and was therefore not entitled to exercise its option to terminate at the end of the five years, but was required to continue to operate the service station under the terms of the lease.

As conduct of defendant upon which plaintiffs apparently rely as reenforcing their claim that it was in default the complaint alleges that in November, 1950, defendant acquired some interest in "Golden Eagle" gasoline stations, including one within a block of the plaintiffs' station; that it closed the plaintiffs' station for several months and then sublet it to tenants whose methods of operation were not as good as those of defendant and who sold less gasoline. The complaint then asserts that prior to November, 1950 (i.e. even before defendant acquired the interest in "Golden Eagle") defendant operated plaintiffs' station "in the manner that discouraged the selling of gasoline and in a manner that would cause persons in that area to purchase gosoline from the station a block away selling Golden Eagle gasoline," thereby reducing gasoline sales at plaintiffs' station and causing devaluation of the premises.

Plaintiffs refer to a provision in the lease which allows defendant to sublet the premises if such subletting "is in accordance with Lessee's customary methods of operating premises." They indicate that a sublessee under this provision was expected to operate the station in as good a manner as defendant, but that the sublessee had methods of operation which were even worse than those of defendant.

Another provision in the lease merits consideration in this connection because it contains the answer to these objections. It says, "The manner of conducting said business or businesses shall be and remain within the sole discretion of lessee, its sub-lessee, assignee or any other person or persons occupying the demised premises by authority of lessee, and shall not be subject to the exercise of any control by lessor." From this it appears that lessor understood and agreed at the time the lease was executed that she was not hiring an employee but was leasing a service station, and that she could not control its operation by defendant. If the station sold less than 15,000 gallons of gasoline a month or depreciated in value because of defendant's methods, she would not, for either of those reasons, be entitled to complain. In any event none of these matters of poor methods, small sales or unsatisfactory subtenants could properly be urged as a "default" which would preclude an exercise by defendant of an option to terminate the lease at the end of five years. Prior to that time defendant had resumed its own operation of the station, and was then doing everything the lease required it to do, even to the extent of sending a report of sales covering the period of its tenancy. Strictly speaking, when the five-year period was up defendant was not then in default.

As above stated, it was required that defendant give a six months' advance notice of its intention to exercise the option to end the lease when the first five years had ended, and it appears that it did so as early as June, 1950. About six months after this notice had gone to lessor, defendant's representative had a meeting with her at a bank and the service station operations were discussed. Lessor, at that time, did not say anything to lessee about its notice of intention to terminate the lease at the end of the five years, although she had received the notice. She said nothing about lessee's omission to send the gallonage report for the preceding month. Lessor knew about the operation of the station and that the sales were less than 15,000 gallons per month.

There is no evidence that lessor informed lessee of her intention to reject the notice of termination because reports of sales had not been made, nor does it appear that she made any demand, even after she had rceived that notice, for such reports, up to the date of her death in November, 1951. After that date her executors repudiated the termination notice and demanded a report of sales covering the period of the lease up to that time, which was furnished to them by lessee.

The trial court concluded that defendant was in default and had lost its right to exercise the option to end the lease; that plaintiffs were not estopped to set up the default in opposition to defendant's endeavor to end the tenancy, that defendant shall be required to continue to operate the station and to perform all of its obligations under the lease; and that defendant is obligated to pay plaintiffs' attorney's fees in this action under certain other terms of the lease because the controversy was its fault.

A critical evaluation of lessor's claim that defendant was in default and of the trial court's determination that defendant's conduct constituted such a default as would preclude termination of the lease discloses that adequate basis for this finding and judgment must be found if it is found at all, in defendant's failure to make its required gallonage reports showing sales each month. Otherwise the trial court's decision cannot be sustained. What do we find? At the end of the first month defendant apparently sent its check for the basic rental and continued sending these checks each month. No report of gasoline sales was made on the 20th day of the second month and of each month thereafter. The obvious effect of these regular payments of the minimum rental was to inform lessor that lessee claimed that the gasoline sales were less than 15,000 gallons for the preceding month. How much they fell below this amount was apparently of no primary concern to lessor. In any event it is clear that when the reports were not made lessor had a right to demand them. Instead of doing so she accepted the monthly check for the minimum rental and permitted lessee to continue its occupancy of the premises. Actually she suffered no detriment and was not deprived of any information.

By accepting monthly payments of the minimum rental without demanding sales reports, lessor had waived her right to assert that failure to furnish them constituted such a default of lessee as to preclude its exercise of the option to terminate. Because of her failure to reject the

notice of intention to terminate because of this failure to furnish sales reports, and her failure to demand such reports for the year and a half after she had received lessee's notice (during which time lessee could have supplied all the missing sales reports and thereafter kept them up to date) lessor is estopped to resist the termination of the lease by asserting that lessee is in default.

An implied waiver is found in a situation in which the party for whom the act in question was to be done permitted his contractee to perform contrary to the contract and accepted the benefits of such performance after default and with knowledge thereof. (*Pitt* v. *Mallalieu*, 85 Cal.App.2d 77, 85 [192 P.2d 24].)

"[W]aiver cannot be predicated upon the fact of acceptance of rent alone. The party relying on a waiver must plead and prove facts from which an actual intention to relinquish the right may be derived. This intention may be manifested by express agreement or by conduct. If conduct is relied upon, *bona fide* reliance upon such conduct must also appear." (*Linnard* v. *Sonnenschein*, 94 Cal.App. 729 [272 P. 315].) Waiver of a legal right may be implied as well as express. (*Prairie Oil Co.* v. *Carleton*, 91 Cal.App. 2d 555, 559 [205 P.2d 81].)

The lease in the instant case had the effect of providing for a 10-year term unless lessor or lessee chose to end it after five years. The right to terminate was a valuable part of the agreement. Lessor could not by her conduct mislead lessee to its detriment and then declare that it had forfeited its right under the lease. There can be no question that lessee relied upon the conduct of lessor as constituting a waiver.

The existence of an estoppel is a question of fact and the settled rule as to the proof of equitable estoppel is that the burden rests upon the party asserting such estoppel to prove all the elements constituting it by evidence having some reasonable tendency to establish the fact. (*General Motors Acceptance Corp.* v. *Gandy*, 200 Cal. 284, 295 [253 P. 137].) The principal facts in the case now before us are not in serious dispute. The effect of the language used in the lease and the conduct of the parties must therefore be construed and interpreted. The only conclusion we can reach is that lessor had waived her right to declare, (1) that lessee was in default, and (2) that it was thereby precluded from

ending the lease. ■ Because of lessor's conduct she led defendants to believe that she had waived her right and plaintiffs, as her executors, are now estopped to assert this alleged default in resisting lessee's exercise of its right to terminate. (See *People* v. *Ventura Refining Co.*, 204 Cal. 286, 295 [268 P. 347, 283 P. 60].)

Code of Civil Procedure, section 1962, subdivision 3, provides: "Whenever a party has, by his own declaration, act or omission, intentionally and deliberately led another to believe a particular thing true, and to act upon such belief, he cannot, in any litigation arising out of such declaration, act, or omission, be permitted to falsify it."

■ "Where a party to a transaction induces another to act on the reasonable belief that he has waived or will waive certain rights, remedies, or objections which he is entitled to assert, he will be estopped to insist on such rights, remedies, or objections to the prejudice of the one misled." (31 C.J.S. 246.)

Plaintiffs suggest that in this case the principles discussed in *Swift* v. *Occidental Mining & Petroleum Co.*, 141 Cal. 161, 173 [74 P. 700], should be considered. In that case renewal of a lease was refused by lessor because of failure of lessee to properly perform during the original term, and it was urged that lessor had waived its right to refuse a renewal. The court pointed out, "The waiver of a forfeiture is one thing; the renewal of the lease is quite another. The neglect of the landlord to strictly enforce his right of forfeiture for breach of condition does not entitle the tenant to a renewal when such renewal is dependent upon faithful performance of conditions." ■ But, as the court observed in *Kaliterna* v. *Wright*, 94 Cal.App.2d 926, 936 [212 P.2d 32]:

"The Swift case holds that the mere failure of the landlord to insist upon a forfeiture for waste or breach of covenant, does not preclude the landlord from refusing to grant another term. The case expressly holds that there was no waiver of performance of the conditions of the lease."

The court then declared that the Swift case is not authority for the contention, "that oral modification of a lease, or breaches that are waived, justify a refusal to grant a renewal provided in the lease." Nor do we, in the instant case, regard it as authority for plaintiffs' claim that a breach that is waived can justify a denial to the tenant of the valuable right to end the lease at the close of the five-year term.

On the matter of the award of attorney's fees to plaintiffs it must be held that since justification for plaintiffs' action is absent, this award cannot stand.

Judgment reversed.

White, P. J., and Doran, J., concurred.

A petition for a rehearing was denied July 13, 1953, and respondents' petition for a hearing by the Supreme Court was denied August 20, 1953.