[Civ. No. 25553. Second Dist., Div. One. Oct. 31, 1961.]

WILFRED CLEGG et al., Respondents, v. VESTER B. SANSING et al., Defendants; MARK L. MOODY, INC. (a Corporation), Appellant.

Garvey & Ingram and Bernard E. Ingram for Appellant.

Boller, Suttner and Boller for Respondents.

FOURT, J.—This is an appeal "from the judgment . . . in favor of the plaintiffs . . . and from the whole thereof."[1] The action was tried before the court sitting without jury.

Appellant does not question the sufficiency of the evidence to support the findings of fact. Some of the facts as found by the trial court are as follows:

The defendant (appellant), Mark L. Moody, Inc., was at all times pertinent, a corporation duly organized and existing. Robert L. Moody was the president of said corporation and all acts performed by him were within the scope of his authority. (Finding I.)

In May, 1958, Vester B. Sansing, Betty Jette Daniels and Phillip H. Sunnes were co-partners, doing business under the trade name "Culligan Soft Water Service of Temple City-El Monte." "As such co-partners . . . they were operating a business of furnishing and servicing soft water equipment installations designed by Culligan, Inc. Said business was operated under a subfranchise for the Temple City-El Monte area, acquired by them by written contract from defendant Mark L. Moody, Inc. Mark L. Moody, Inc. was, and now is the licensee for the entire county of Los Angeles from Culligan, Inc." (Finding II.)

The partnership agreement contained a "buy and sell" provision "whereby any of the partners was entitled to offer to purchase the interest of the other partners by making a written offer to do so at his own valuation. Under the provisions of said agreement, the partners who were made offerees by such an offer were then and thereby entitled to elect either to sell at said price to the offeror or buy at said price." (Finding III.)

On May, 1958, plaintiffs commenced negotiations with Sansing and Daniels for the purchase of said business. At that time, Sansing and Daniels advised plaintiffs that they would be able to sell the business to plaintiffs and would sell said business if they acquired the interest of their partner, Phillip H. Sunnes. (Finding IV.)

---

[1] The judgment provides in pertinent part as follows:

"It Is Hereby Ordered, Adjudged and Decreed that the defendant, Mark L. Moody, Inc., shall approve in writing, transfer of the Culligan Soft Water Service franchise for Temple City and El Monte, California by the defendants, Vester B. Sansing and Betty Jette Daniels to the plaintiffs, Wilfred and Vera Clegg, and shall approve in writing, the acquisition by said plaintiffs of all of the rights of said Vester B. Sansing and Betty Jette Daniels in and to the business conducted by them under the name 'Culligan Soft Water Service, Temple City-El Monte' and shall deliver said executed written approvals to plaintiffs forthwith upon entry of judgment herein."

In June, 1958, plaintiffs conferred with defendant, Mark L. Moody, Inc., and notified said defendant that they (i.e., plaintiffs) were interested in acquiring the Temple City-El Monte franchise of said Sansing, Sunnes and Daniels. (Finding V.)

In August, 1958, Sunnes, pursuant to the "buy and sell" agreement made an offer to Sansing and Daniels for the purchase of their interest in said business. (Finding VI.)

Thereafter, Sansing and Daniels "orally agreed with plaintiffs that if plaintiffs would advance the sum of $13,500.00 to defendants, they would use said sum of money as part of the purchase price to acquire the interest of Phillip H. Sunnes in said business and, having acquired his interest, they would sell all of said business to plaintiffs. Plaintiff [sic] and said defendants (i.e., Sansing and Daniels) thereafter orally agreed upon the term upon which plaintiffs would purchase said business from defendants and the terms of said agreement were embodied in a written agreement which was introduced into evidence herein." (Finding VII.)

"On or about the 6th day of October, 1958, plaintiffs advised Mark L. Moody, Inc. that they had negotiated the purchase of said business from defendants Sansing and Daniels; that a definite price and terms had been reached and asked defendant, Mark L. Moody, Inc. for instructions as to how to proceed. Said defendant requested that plaintiffs furnish said defendant with a financial statement and a bill of sale and requested reassurance that plaintiffs would not keep Vester B. Sansing as an employee after plaintiffs acquired the business. Two days thereafter, plaintiffs submitted to defendant Mark L. Moody, Inc., their financial statement which was received by said defendant and no objection was made thereto. *At no time did said defendant inform plaintiffs that any objections whatsoever, existed to their acquisition of said business.*" (Emphasis added, Finding VIII.)

"The entire conduct of the defendant, Mark L. Moody, Inc. was of such a nature that a reasonable man would be led to believe that said defendant *had consented* to the purchase by plaintiffs of said business, and plaintiffs were reasonably entitled to believe and rely upon same, and did believe and rely upon same, and conducted themselves accordingly." (Emphasis added, Finding IX.)

"Thereafter, in reliance upon said conduct of defendant, Mary [sic] L. Moody, Inc., and in the belief that defendant, Mark L. Moody, Inc. *had consented* to the purchase by them

of said business as aforesaid, the plaintiffs did the following: [Emphasis added.]

"1. They advanced to defendants, Vester B. Sansing and Betty Jette Daniels, the sum of $13,500.00 for which they received from Vester B. Sansing and Betty Jette Daniels, a demand promissory note to evidence the same, and which said funds were advanced for the sole purpose of making the down payment for the acquisition of the interest of Phillip H. Sunnes in said business. Said funds were promptly deposited in an escrow opened between Sunnes, on the one hand, and Sansing and Daniels, on the other hand, to accomplish the sale of said business.

"2. They entered into the written agreement dated October 9, 1958, for the purchase of said business which is in evidence as an exhibit. [Finding X.]

"After the facts found in finding No. X and after deposit of said funds, defendant, Mark L. Moody, Inc. informed plaintiffs that it did not consent to said transfer and refused further approval of same." (Finding XI.)

Thereafter, Sansing and Daniels acquired all of Sunnes' interest in the business "and now stand ready and willing to convey the same to plaintiffs." (Finding XII.)

Finally, finding XIII provides "The Court finds that the defendant, Mark L. Moody, Inc. *consented* to the acquisition of said business by plaintiffs; *that the consent of said Mark L. Moody, Inc., was relied upon by plaintiffs in their making of the contract to purchase said business and in the payment of $13,500.00 to defendants Sansing and Daniels; that said defendant Mark L. Moody, Inc. is now estopped to deny that it gave such consent; . . .*" (Emphasis added.)

In the opening brief, appellant asserts that the trial court improperly utilized the doctrine of promissory estoppel; that the trial court decreed specific performance of appellant's promise to give consent; and that the granting of specific performance was error because (1) "since the remedy of specific performance would not be available to the defendant Moody, there is no mutuality of remedy" and (2) "Plaintiff Has an Adequate Remedy at Law."

Respondent's position is that the case at bar is not concerned with the doctrine of promissory estoppel, but involves an application of the doctrine of estoppel *in pais* (i.e., defendant consented; plaintiffs relied; defendant estopped to deny that it consented; and finally that plaintiffs entitled to written document evidencing consent.)

 Estoppel *in pais* arises from declarations or conduct of the party estopped. An estoppel may arise from silence where there is a duty to speak. (Code Civ. Proc., § 1962, subd. 3); *Dettamanti* v. *Lompoc Union School Dist.*, 143 Cal. App.2d 715, 721 [300 P.2d 78]; *Klein* v. *Farmer*, 85 Cal.App. 2d 545, 552 [194 P.2d 106]; *Wood* v. *Blaney*, 107 Cal. 291 [40 P. 428]; *Wilk* v. *Vencill*, 30 Cal.2d 104, 107 [180 P.2d 351].)

██ It is ". . . an application of the fundamental, equitable, and moral rule that a man may not be permitted to deny the truthfulness of an assurance which he has given to another for the purpose of having it acted upon by the latter, and which the latter has acted upon." (*American Nat. Bank* v. *A. G. Sommerville, Inc.*, 191 Cal. 364, 373 [216 P. 376].)

██ The existence of an estoppel is a question of fact. (*John Paul Lumber Co.* v. *Agnew*, 125 Cal.App.2d 613 [270 P.2d 1044]; *Jones* v. *Sunset Oil Co.*, 118 Cal.App.2d 668 [258 P.2d 510]; *Safway Steel Products, Inc.* v. *Lefever*, 117 Cal.App.2d 489 [256 P.2d 32].)

██ As heretofore indicated, appellant concedes the sufficiency of the evidence to support the findings of fact. Finding IX states in part "The entire conduct of the defendant . . . was of such a nature that a reasonable man would be led to believe that said defendant *had consented* . . ." (Emphasis added.) Finding X provides in pertinent part "Thereafter, in reliance upon said conduct of defendant . . . and in the belief that defendant . . . *had consented* to the purchase by them of said business as aforesaid, the plaintiffs did the following . . ." (Emphasis added.) Finally, Finding XIII provides in pertinent part "The Court finds that the defendant . . . *consented* to the acquisition of said business . . . ; that the consent . . . was relied upon by plaintiffs . . . ; that said defendant . . . is now estopped to deny that it *gave such consent* . . ." (Emphasis added.)

It is clear from the findings that the trial court found that defendant gave its consent, not that it had promised to give its consent. It is equally clear that the court did not decree specific performance of a promise to give consent. Appellant was estopped to deny the consent which it gave.

The trial court having found that the defendant *consented*, there was no error in requiring the defendant to execute written evidence of its consent.

For the reasons stated, the judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.