743 F.2d 1021
 John H. BILLMAN, et al., Appellees,
v.
V.I. EQUITIES CORPORATION, et al., Virgin Islands Equities
Corporation, Alley Associates, Alley Corporation,
and King Christian Enterprises, Inc., Appellants.
 No. 83-3295.
 United States Court of Appeals,
Third Circuit.
 Argued April 26, 1984.
Decided Sept. 21, 1984.
Rehearing and Rehearing In Banc
Denied Oct. 19, 1984.
 
 Jeffrey L. Resnick (argued), James & Resnick, Christiansted, St. Croix, U.S.V.I., Scott Silverlight (argued), Isherwood, Hunter & Colianni, Christiansted, St. Croix, U.S.V.I., for appellants.
 Richard F. Lark (argued) Cutchogue, N.Y., Mark L. Milligan, Christiansted, St. Croix, U.S.V.I., Maria Tankenson Hodge (argued) Charlotte Amalie, St. Thomas, U.S.V.I., for appellees.
 Before SEITZ, GARTH and HIGGINBOTHAM, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Circuit Judge.
 
 
 1
 This is an appeal from an order of the District Court of the Virgin Islands entering judgment against defendants in an action for unlawful detainer. This court has jurisdiction under 28 U.S.C. Sec. 1291.
 
 I. FACTS[1]
 
 2
 Mrs. Marie Billman and Captain Chester A. Ingvolstad were fee simple owners of the property at # 55 King Street, Christiansted, St. Croix, known as "King's Alley." On June 15, 1961, they leased the property to Mr. Wendy Hilty. John H. Billman and Mable Dale Ingvoldstad ("landlords") became the owners of King's Alley upon the death of their spouses, in 1968 and 1969 respectively.
 
 
 3
 The King's Alley lease provided for a 20 year term ending on January 31, 1981. It also provided an option for two additional five year terms. Mr. Hilty or his successors and assigns could exercise this option by giving the landlords at least 30 days notice.
 
 
 4
 On November 17, 1961, Mr. Hilty assigned his interest in the lease to King Christian Enterprises, Incorporated ("KCE"), a corporation formed by Hilty. This assignment was contemplated in the lease agreement, but no further assignments were permitted without the landlords' consent, except assignments to corporations in which Hilty was the majority shareholder.
 
 
 5
 In 1961 Hilty became associated with George Becker, a lawyer. In February of 1962 they formed the Virgin Islands Equities Corporation ("VIE"), of which Hilty was originally the sole shareholder, and Becker was an officer. On March 4, 1962, KCE assigned its interest in the lease to VIE, which intended to use a part of King's Alley as a servient estate to an adjoining hotel. VIE sublet the unneeded part of King's Alley back to KCE.
 
 
 6
 This sublease provided that KCE (as sublessee) would perform all of the duties owed by VIE (the lessee) under the lease, including payment of the rent directly to the landlords. The term of the sublease extended until January 30, 1981, one day less than the term of the lease. If VIE exercised its option for the two additional five year terms, the term of the sublease would be extended until one day prior to the termination of the second additional lease term.
 
 
 7
 A limited partnership named Alley Associates ("Alley") was formed in 1965, and KCE assigned its sublease to Alley. This fact was communicated to the landlords, who expressed concern that this assignment without the landlords' consent was a violation of the lease. Becker informed the landlords that KCE had assigned a sublease, and only a sublease, to Alley, and that the transaction did not violate the terms of the lease agreement.
 
 
 8
 In sum, after 1965 there were three primary actors relevant to this opinion. They were the landlords, VIE [hereinafter referred to as "lessee"], and Alley [hereinafter referred to as "sublessee"].
 
 
 9
 On November 11, 1971, nearly ten years before the expiration of the lease, Mr. Becker wrote to the landlords on behalf of Alley. The letter stated:RE: Alley Associates--Kings Alley Shopping Center, 55 King Street, Christiansted, St. Croix, Virgin Islands
 
 Dear Sir & Madam:
 
 10
 Alley Associates, present owner and holder of the lease of the above premises (originally made June 15, 1961), hereby gives notice that it exercises the option therein contained to renew the lease for two consecutive additional terms of five years each as provided in Paragraph 3.
 
 
 11
 You are further advised that the tenant's address for mailing purposes is:
 
 
 12
 c/o Becker & London, Esqs.
 
 15 Columbus Circle
 New York, New York 10023
 
 13
 The landlords did not respond directly to this letter. From the time it was written, however, through the termination date of the original lease term, business dealings continued between Alley and the landlords on the explicit assumption that Alley had properly exercised the renewal option. The landlords bargained with Alley for an amendment to the lease, and referred to it as one "now operative between us." The landlords negotiated with Alley for an extension of the lease beyond 1991. They even accepted the benefit of capital improvements made by Alley as late as 1979.
 
 
 14
 On February 4, 1981, nearly ten years after the November 11, 1971 letter attempting to renew the lease, and 4 days after the original lease term had expired, the landlords informed VIE and Alley that Alley did not have the right to exercise the renewal option under the lease agreement. Thus, the landlords claimed, there had been no valid exercise of the option, and the lease had terminated by its own terms. The landlords requested that VIE and Alley vacate the premises. They refused. The landlords brought an unlawful detainer action in the district court. After a trial to the court, it held that the landlords were entitled to possession. This appeal followed.
 
 II. DISTRICT COURT OPINION
 
 15
 Initially, the district court found that Alley merely had been assigned a sublease and that, therefore, Alley did not have the right to exercise the renewal option under the terms of the lease. This conclusion is not challenged on appeal.
 
 
 16
 Next, the district court rejected the lessee's argument that the landlords were equitably estopped from asserting that the attempted renewal was ineffective. The court held that since, like the landlords, the lessee knew or should have known that Alley did not have the right to exercise the option, it could not justifiably have relied on the landlords' representation that the option to renew the lease had been properly exercised.
 
 
 17
 The district court also rejected the lessee's equitable defense of laches. Finally, the court found that the lessee's affirmative defense of waiver was without merit. It is to this final determination that we now turn. We recognize that the waiver issue was not explicitly argued in the briefs, but it was decided by the district court and discussed at oral argument on appeal.
 
 III. WAIVER
 
 18
 The district court characterized the right that lessee contends was waived as the landlords' "right to claim that the lease expired on January 31, 1981, by its own terms." Billman v. V.I. Equities Corp., No. 81-122, slip op. at 39 (D.V.I. May 3, 1983). A more accurate characterization is the right to insist on compliance with the option's condition that only Mr. Hilty or his successors and assigns could renew the lease.[2]
 
 
 19
 The court cited precedent defining "waiver" as "a voluntary and intentional relinquishment of a known right." Billman, slip op. at 38; see, e.g., Van Den Broeke v. Bellanca Aircraft Corp., 576 F.2d 582 (5th Cir.1978). It then found that the evidence "did not conclusively establish that the [landlords] have voluntarily and intentionally relinquished their known right ...." Billman, slip op. at 41.
 
 
 20
 The district court certainly cited abundant precedent for its legal "waiver" standard. But, as Professor Williston points out, "[waiver] is a troublesome term in the law.... It is used with different meanings and there are, therefore, necessarily conflicting judicial statements as to its requisites." 5 Williston on Contracts Sec. 678 at 239 (ed. W.H.E. Jaeger 1961). He goes on to explain that "[w]hether waiver must be intentional and whether the right waived must be known depend in great degree upon which of the various things called 'waiver' the discussion is about ...." Id. at 242-43.
 
 
 21
 The district judge did not apply the proper legal standard to this case. Here, when we analyze whether there was a "waiver," we must ask whether there was "[a] promise ..., express or implied in fact, supported only by action in reliance thereon, to excuse performance ... of a condition ...." Id. Sec. 679 at 253; cf. Fehl-Haber v. Nordhagen, 59 Wash.2d 7, 365 P.2d 607 (1961). The condition, as discussed above, is that only Mr. Hilty or his successors and assigns can exercise the renewal option.
 
 
 22
 This genre of waiver is distinguishable from equitable estoppel, since "there is no misrepresentation of an existing fact." Id. (emphasis added). It is akin to promissory estoppel. See Restatement (Second) of Contracts Secs. 89 & 90. Thus, any finding that the lessee knew the "true facts" of the case, i.e., that Alley did not have the right to exercise the renewal option under the terms of the lease, is irrelevant to the waiver issue. The landlords can be found to have waived their right to insist on strict compliance simply because they have, in effect, promised not to assert it.
 
 
 23
 The Restatement (Second) of Contracts, which has been adopted by the Legislature of the Virgin Islands[3], supports the application of this legal "waiver" standard under these facts. It states that "[a] promise modifying a duty under a contract not fully performed on either side is binding ... to the extent that justice requires enforcement in view of material change of position in reliance on the promise." Sec. 89 (modification of an executory contract); Loper v. O'Rourke, 86 Misc.2d 441, 382 N.Y.S.2d 663 (1976) (citing the first restatement). See also, Sec. 90 (promissory estoppel).
 
 
 24
 Thus, in this case three factors must be present if a waiver is to be found. First, the landlords must have promised not to enforce the condition of the option. Second, the lessee must have relied to its detriment on the landlords' promise. And third, in view of the detrimental reliance, justice must require enforcement of a waiver. Restatement (Second) of Contracts Sec. 89; 5 Williston Sec. 689 at 308-09.
 
 
 25
 All three of these factors are present here. First, it is clear from the district court's opinion that the landlords impliedly promised not to enforce the condition. The district court held that "[p]laintiffs were silent when they had a duty and opportunity to speak...." Billman, slip op. at 27. The court also held that "this silence amounted to a representation" that the option to renew the lease had been properly exercised. Id. Neither holding is questioned on appeal.
 
 
 26
 Like misrepresentations of fact, "promise[s] ... may [also] be inferred wholly or partly from conduct." Restatement (Second) of Contracts Sec. 4. In this case, to support its finding of misrepresentation, the district court relied primarily on the landlords' silence in response to the November 11, 1971 letter attempting to renew the lease. Since the landlords had a duty to inform the lessee that the attempted exercise was invalid, the court held that the landlords' silence amounted to a representation that the exercise was valid. In light of the fact that all parties were charged with the knowledge that, under the terms of the lease, the exercise was invalid, the landlords' conduct must also amount to a promise that it waived any right to insist on strict compliance.
 
 
 27
 Second, the lessee clearly relied to its detriment on the landlords' promise. Before January 31, 1981, the lessee could have complied with the terms of the option. When the landlords finally requested that the lessee vacate the premises, nearly ten years after the attempted exercise, it was four days too late to comply with those terms.[4]
 
 
 28
 And third, we reach the issue of whether justice requires enforcement of a waiver. On the one hand, the landlords promised to waive their right to insist that only Mr. Hilty or his successors and assigns could renew the lease. The lessee relied on that promise to its detriment. On the other hand, the landlords received, not only the thirty days renewal notice provided for in the option, but nearly ten full years notice that the lease would be renewed. These factors, in light of the fact that both parties are charged with knowledge of the option's requirements, lead us to conclude that justice does require enforcement of a waiver.
 
 
 29
 Since the landlords have waived their right to insist on strict compliance with the option's condition that only Mr. Hilty or his successors and assigns could renew the lease[5], they will not be heard to assert that the November 11, 1971 exercise of the option was ineffective. Therefore, the lessee retains its rights under the lease renewal until January 31, 1991, the end of the second five year renewal term.[6]
 
 
 30
 The order of the district court will be reversed.
 
 
 31
 A. LEON HIGGINBOTHAM, Jr., Circuit Judge, dissenting.
 
 
 32
 I dissent. We sit here as an appellate court and the findings of the district court must be affirmed unless they are clearly erroneous. I could certainly understand why my colleagues might make different findings if they were the trial judges evaluating this record. However, we do not have the option to make a different set of findings consistent with what we would have found if we were the trial judge.
 
 
 33
 Since on this record Judge Peterson's findings and conclusions were clearly within the ambit of permissible fact finding, I would affirm the judgment of the district court of the Virgin Islands on the basis of her thoughtful opinion. Consistent with those findings, her legal analysis and conclusions of law were proper. I therefore would affirm the judgment of the court below.
 
 
 34
 Judge Peterson's following comments are permissible findings on this record and also exemplify an appropriate understanding of the applicable legal precepts:It is this Court's conclusion that the Defendants have failed to meet the demands of the waiver doctrine, and that such failure is two-fold, although it is based on one particular facet of the circumstances leading up to this case. As stated previously, attorney Becker ran both Alley and VIE and was the signatory on the assignment of the Master Lease from KCE to VIE as well as on the sublease back to KCE. He therefore knew, or should have known, that the right to exercise the option to renew the lease remained with VIE. Nevertheless, he still sent the November 11, 1971, letter to the Plaintiffs attempting to exercise the option on behalf of Alley. Since Alley Associates, through George Becker, sent a letter to the Plaintiffs attempting to exercise the option which Becker knew, or at least should have known, was not only improper and invalid but was also wrong in that it claimed that Alley was the "present owner and holder" of the Master Lease, which it was not. Alley cannot now show that the Plaintiffs voluntarily and intentionally relinquished their right to declare that the lease expired January 31, 1981. This Court is convinced that the Defendants have not satisfactorily shown that the Plaintiffs' conduct clearly, unequivocally, and without any other possible explanation indicated an intent to waive this right.
 
 
 35
 The second way in which the Defendants have failed to meet the demands of the waiver doctrine concerns the intermingling of the elements of the doctrines of waiver and estoppel when an implied waiver is at issue. Again, it is Attorney Becker's particular position with respect to the parties involved, as well as his actual and constructive knowledge of the facts, which negate the Defendants' claim of waiver.
 
 
 36
 A waiver may be express or implied, but in the absence of an express agreement a waiver will not be presumed or implied contrary to the intention of the party whose rights would be injuriously affected thereby, unless by his conduct the opposite party has been misled, to his prejudice, into the honest belief that such waiver was intended or consented to.
 
 
 37
 Universal Gas Co. v. Central Illinois Public Service Co., 102 F.2d 164, 168 (7th Cir.1939). See also Jones v. Sunset Oil Co., 118 Cal.App.2d 668, 258 P.2d 510, 514 (Cal.Dist.Ct.App.1953); Smith v. Faris-Kesl Const. Co., Ltd., 27 Idaho 407, 150 P. 25, 32; Waterway Terminals Co. v. P.S. Lord Mechanical Con., 242 Or. 1, 406 P.2d 556, 568 (1965); Brown v. City of Pittsburgh, 409 Pa. 357, 186 A.2d 399, 401 (1962); 31 C.J.S. Estoppel, Section 67 at 409 (1964). As was the case under the doctrine of estoppel, in light of Becker's particular position, knowledge, and conduct, Defendants cannot establish that they honestly and in good faith were led to believe that the Plaintiffs intentionally and voluntarily relinquished their right to declare the lease terminated in January, 1981. For these reasons, Defendants' affirmative defense of waiver must also fail.
 
 
 38
 App. at 54-56 (footnotes omitted).
 
 
 39
 For the above reasons, as noted by Judge Peterson, I dissent.
 
 
 
 [1]
 These facts reflect the findings of the district judge, which are not contested by either party
 
 
 [2]
 The lessee suggests this characterization of the right in its answer
 22) By not timely objecting to Alley Associates [sic] exercise of the option to renew in 1971, plaintiffs have waived the right to raise such objection.
 23) Plaintiffs have by course of conduct with Alley Associates including inter-alia, acceptance of rent, demand for and acceptance of Real Estate Tax payments, renegotiation of further lease extension (beyond 1991). Amendment of existing lease and demand for and acceptance of insurance certificates, treated and accepted Alley Associates as assignee and/or successor to the original lessee.
 
 
 [3]
 V.I.CODE ANN. tit. 1 Sec. 4 states:
 The rules of common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary.
 
 
 [4]
 The lessee would have had every reason to renew the option. It is undisputed that the lessee owned the hotel on the adjoining property at # 57 King Street. It benefitted from access to # 55 King Street for the purposes of egress and ingress to the hotel. Moreover, the lessee specifically reserved its interest in the "use and operation of the hotel and swimming pool to be built on a portion of the unlet vacant portion of # 55 King Street ...." Appendix at 75
 
 
 [5]
 We hold only that this particular right was waived, and leave undisturbed all remaining contractual rights and duties between the parties
 
 
 [6]
 We decline to comment on what the parties' rights and duties would be in a case in which the lessee disputes, rather than asserts, the effectiveness of the sublessee's attempted renewal. This lessee, of course, will be estopped from taking a position contrary to its position in this litigation, i.e., that the option for the two additional terms has been renewed effectively