[Civ. No. 2477. Third Appellate District.—June 26, 1922.]

## A. J. MANASSE et al., Appellants, v. F. F. FORD et al., Respondents.

[1] LANDLORD AND TENANT—OPTION TO PURCHASE—SALE BY LESSOR TO THIRD PERSON—CONSTRUCTION OF CONTRACT.—Under a lease giving the lessee the right to purchase the demised premises at any time during the term thereof at a specified price, but providing that if at any time after a specified date, the lessee not having elected to exercise his option, the lessor shall receive a *bona fide* offer from any other person, and shall be minded to accept the same, the lessor shall serve notice thereof on the lessee, and that if the lessee does not elect within thirty days thereafter to purchase the property, "the lessor may then sell the same to such other purchaser subject to this lease and this lease the conditions, restrictions, and covenants thereof shall then be in full force and effect and binding upon the lessee and the purchaser of said property," the lessee has not the

right to exercise such option to purchase as against a third person to whom the lessor has made a *bona fide* sale of the property in accordance with the provisions of the lease.

APPEAL from a judgment of the Superior Court of Madera County. Stanley Murray, Judge. Reversed.

The facts are stated in the opinion of the court.

Fee & Ring for Appellants.

John W. Maloy and Lee D. Windrem for Respondents.

PREWETT, J., *pro tem.*—The facts of this controversy may be very briefly stated. The predecessor in interest of the plaintiffs, on May 6, 1919, leased to respondent Ford for a term ending May 5, 1922, certain real property situated in the city of Madera. The terms of the lease itself are not in controversy, but in addition to the proper provisions for demising the premises there is contained in the lease an option in favor of said Ford to purchase the property at any time during the term at a price of $9,500. [1] The trouble arises over the following proviso modifying said option:

"*Provided,* however, that if, at any time after November 6th, 1919, the lessee not having theretofore elected to purchase the same, the lessor shall receive a *bona fide* offer from any other person and shall be minded to accept the same, the lessor shall then serve personally on the lessee a notice in writing of the price and terms of such offer from such other person and of the intention of the lessor to accept the same; and the lessee shall have the right for thirty days thereafter to purchase the said real property at and for the price and on the terms specified in said notice and at a price not exceeding said above mentioned $9,500; and provided further that if the lessee shall not within said period of thirty days elect to purchase the said property, the lessor may then sell the same to such other purchaser subject to this lease and this lease, the conditions, restrictions and covenants thereof shall then be in full force and effect and binding upon the lessee and the purchaser of the said property."

The lessor found a *bona fide* purchaser for the sum of $9,500 and he thereupon gave to respondents the written

notice required by the terms of said proviso. They failed for more than thirty days to purchase the property, and thereupon and on April 9, 1921, the lessor sold the entire property to appellants for said sum of $9,500 and they now hold the title thereto. Notwithstanding the plain provisions contained in said proviso, the respondents claim the right to purchase the property from the appellants. They base this contention upon that clause of the proviso which reads as follows: "the lessor may sell the same subject to this lease and this lease, the conditions, restrictions and covenants thereof shall then be in full force and effect and binding upon the lessee and the purchaser of the said property."

The trial court rendered judgment in favor of the respondents and found, in effect, that they continued after the sale to have the same rights of purchase of the property as though the proviso had never been incorporated in the lease. The court, in so doing, however, disregarded one of the leading statutory canons of interpretation. This is that some effect must be given to each and every provision of a contract, if this can be done without doing violence to the language used by the parties.

"The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (Civ. Code, sec. 1641.)

"A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable and capable of being carried into effect, if it can be done without violating the intention of the parties." (Civ. Code, sec. 1643.)

"However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract." (Civ. Code, sec. 1648.)

"Particular clauses of a contract are subordinate to its general intent." (Civ. Code, sec. 1650.)

"Repugnancy in a contract must be reconciled if possible by such an interpretation as will give some effect to the repugnant clauses, subordinate to the general intent and purpose of the whole contract." (Civ. Code, sec. 1652.)

There is no repugnancy in the terms of the contract, but if there were an effort should be made to give some effect to every part of it. Moreover, it must receive such an interpretation as will avoid absurdities and particularly such an interpretation as will not serve to excise any of its provisions.

The lease in question consists of two very distinct parts. One of these is the lease proper. This portion demises the leasehold estate and deals with the terms, method of use, rentals, etc. The other portion consists solely of an option to the respondents to purchase the property and modifications thereof. Confusion will be avoided in construing the terms of the option if this distinction is kept well in mind.

The option portion of the lease gives and reserves the following rights:

(a) An indefeasible option to the respondents to purchase the property at any time up to November 6, 1919, for the sum of $9,500;

(b) A right in the lessor, at any time after said November 6, 1919, to receive a *bona fide* offer for the property from a third person and at any price—notice of such offer to be given to the respondents;

(c) An option in the respondents to purchase the property within the next ensuing thirty days at the price stated in such offer, but not exceeding $9,500;

(d) If not accepted by the respondents within said period of thirty days, then a right in the lessor to sell to such third person at the stated price;

(e) If no such sale be made to a third person, then the option to purchase for $9,500 remains with the respondents to May 5, 1922, the end of the term.

Respondents contend, however, that there should be added another to the foregoing options, to wit:

(f) An option in the respondents, notwithstanding such sale to a third person, to come in at any time during the term of the lease and purchase the property from such third person for $9,500 without interest.

Such construction does violence to the manifest intent of the parties. If the contract had the meaning ascribed to it by the respondents, then there would follow the extraordinary result that the entire proviso would be stricken

from it. This is so, for the reason that without any notice to or conference with the respondents, the lessor had at all times the unqualified right to sell the property at any time during the term, whether before or after November 6, 1919, and at any price—subject, of course, to the terms of the option and lease.

Confessedly, he could do this, and if he could do it, then the proviso conferred upon him or reserved to him not the slightest additional right, if we are to believe the theories of the respondents. This point is demonstrated when we recall that the lessor gave the thirty-day notice in the spring of 1921 and thereafter sold the property for $9,500. According to the respondents, he sold it subject to the terms of the continuing option. But he could have done all this without reference to the terms of the option. It is thus seen that, if the thirty-day notice had no effect, the proviso is bodily excised from the lease. It will be noted too that the lessor could have sold it for any price, great or small.

It is not to be believed that the lessor reserved to himself the right to entertain a *bona fide* offer from a third person, when at all times he had such right without any reservation.

Had the respondents' view been correct they would not have reserved to themselves the right during the thirty days to purchase the property at a price not exceeding $9,500, since, at all times, they had that right, without any reservation.

Should it be asked why the proviso should contain a provision that, notwithstanding a sale to the third person, the sale should be subject to the terms of the lease for the balance of the term, the answer is found in the fact that the main option to the respondents to purchase for $9,500 provides that a sale to them under the option shall terminate the lease; hence the wisdom of the affirmative declaration in the proviso that a sale thereunder did not terminate it. The obvious intent being that the respondents should not be deprived of the possession during the entire term of the lease.

But viewed from a wider angle, it is seen that the parties cannot have contemplated that the respondents should still have the right of purchase after a sale under the terms

of the proviso. Such view would lead to some results that verge closely upon the absurd. The property was sold on the ninth day of April, 1921, for a price of $9,500. The lease itself expired on May 5, 1922. The rental was fixed at $240 per annum. In that view, the parties must have contemplated that the purchaser would pay out $9,500 to reap about $250 as rent, lose about $700 in interest, carry the property for over a year with the chance of depreciation, and in the event of appreciation be under the duty of selling it to the respondents for $9,500 without interest. People do not ordinarily do business in that way. It cannot be understood from the contract that the parties had in mind such a farcical procedure.

The provision for an offer to the respondents and a subsequent sale to a third party meant in truth and in fact an actual and indefeasible sale.

The confusion that has arisen between those terms of the contract which demise the leasehold estate and those which relate to an option to buy and receive title to real property constitute the entire foundation for the defense of the respondents in this action. Said defense is based upon the following clause in said proviso: "subject to this lease and this lease, the conditions, restrictions and covenants thereof shall be in full force and effect and binding upon the lessee and the purchaser of said property."

It is clear that the parties had no thought that this provision continued in force the very options that the proviso itself had extinguished. To say that this provision was necessary because the other parts of the proviso had provided for a sale and then that such sale was in effect invalid because of this provision is but to reason in a circle.

The intent was to reserve to the lessor the unqualified right after November 6, 1919, to make an absolute sale of the property. This he did, and the resultant conveyance conveyed to the appellants an indefeasible title to the property.

The judgment is reversed and the trial court is directed to render judgment on the findings in favor of the appellants in conformity with their prayer for relief.

Finch, P. J., and Burnett, J., concurred.