[Civ. No. 22483. Second Dist., Div. One. Apr. 7, 1958.]

RICHFIELD OIL CORPORATION (a Corporation), Appellant, v. SECURITY-FIRST NATIONAL BANK OF LOS ANGELES, as Executor, etc., et al., Defendants; ELSAM COMPANY (a Corporation), Respondent.

William J. DeMartini for Appellant.

Behymer & Hoffman and Ralph W. Hoffman for Respondent.

WHITE, P. J.—Plaintiff Richfield Oil Corporation, hereinafter called "Richfield," appeals from an adverse judgment in its action for declaratory relief and for specific performance. Defendant Security-First National Bank of Los Angeles is the executor of the estate of William L. Haskell, deceased, and will be hereinafter referred to as the "Executor." Defendant Elsam Company, a corporation, hereafter referred to as "Elsam," was the highest bidder for the decedent's real property at a probate sale thereof.

Richfield was the lessee and occupant of the real property so sold to Elsam. A lease dated December 16, 1954, superseded a prior five-year lease between the same parties dated January 30, 1951, and provided for a term of six years commencing March 1, 1955, one month after the death of the lessor, William L. Haskell.

Article 17 of the lease to Richfield provides that:

"In the event Lessor shall receive from a third party at any time during the term of this lease or during any extension thereof a bona fide offer to purchase the leased premises, or any part thereof, or any holdings of Lessor of which the leased premises are a part, and shall decide to sell the same for the amount named in said offer, Lessor shall promptly give to Lessee written notice of the terms of such offer including the name and address of the offerer and of Lessor's willingness to sell for the price offered, and Lessee shall have the option and privilege of purchasing the premises which are the subject of such offer at said price and shall notify Lessor in writing within twenty (20) days after the date it receives notice from Lessor whether Lessee will purchase said premises for the amount specified in said offer. In the event Lessee shall not give Lessor notice within said twenty day period of Lessee's election to purchase for the amount specified in said offer, Lessor may thereafter sell said premises to the party making the offer, subject, however, to the leasehold estate and rights herein granted to Lessee. Irrespective of whether or not said premises are sold to such party, notice of any subsequent bona fide offer acceptable to Lessor shall be given to Lessee upon the same terms and conditions for acceptance or refusal as hereinabove provided, and failure to exercise any option hereunder shall not affect or

terminate Lessee's rights under any other option contained in this lease. . . . Conveyance of said premises by Lessor to Lessee as in this article provided shall act to cancel this lease in all particulars and if Lessor shall have been paid rentals covering a period subsequent to the date of such conveyance such prepaid rentals shall be applied on and constitute a part of the purchase price of said premises.''

Said lease further provides that ''each and all of the covenants, obligations, and conditions'' thereof shall be binding upon the heirs, personal representatives, successors and assigns of the lessor.

Richfield was notified by the Executor that it had received a bid of $21,500 from a third party for the purchase of the premises of which Richfield was lessee. Richfield, pursuant to said article 17, gave notice in writing of its election to buy on the terms offered and made a like bid. The Executor then reported Richfield's bid to the court and prayed for confirmation of the sale. Upon the hearing in probate court the bidding was brisk. Elsam's bid of $29,600 was the highest bid received. The probate court then (December 9, 1955) announced that the premises were duly and regularly sold to Elsam ''subject to'' Richfield's lease. Elsam's bid was a fair and reasonable price for the property (subject to the lease), and Richfield's lease provided for a fair rental of the property for service station use. Under date of December 9, 1955, the Executor notified Richfield that the leased premises had been so sold to Elsam for $29,600 and that Richfield would be told when to begin payment of rent to the new owner.

Within 20 days thereafter and on December 21st, Richfield served upon the Executor and upon Elsam its notice in writing dated December 21, 1955, that it elected to purchase said property for the amount of $29,600 ''plus such other sums as may be payable to you under and pursuant to the proposed sale to Elsam Co., as confirmed by order of the Superior Court.''

Under date of January 3, 1956, the probate court made its formal ''Order Confirming Sale of Real Property'' and included therein findings as follows: ''that the said real property hereinafter described is subject to a lease of record in which the Richfield Oil Corporation is the lessee and that an employee and agent of said Richfield Oil Corporation, to-wit Don G. White, was present in court and testified that he was authorized by the said corporation to represent it; . . . that participating in said bidding was the said agent of the Rich-

field Oil Corporation, by making a bid on behalf of said corporation; . . . '' and that Elsam's bid of $29,600 was the highest made. Said order is ''that the sale so made . . . subject to the lease of record . . . be and the same hereby is confirmed and upon receipt of the purchase price . . . the executor is directed to execute to said purchaser a deed . . . .''

The instant action was commenced January 5, 1956, and by it Richfield sought: (1) a declaration of ''the rights and obligations of the parties hereto under the lease dated December 16, 1954, and under Article 17 thereof, as said rights and obligations have been affected by the sale to defendant Elsam Co. on December 9, 1955'' in the probate proceedings and ''by the exercise of the option to purchase the property described in said lease by plaintiff herein under and pursuant to its notice of exercise thereof''; (2) that the contract contained in said article 17, as made ''effective and operative by the exercise of the option by plaintiff by its notice dated December 21, 1955, may be decreed to be specifically performed . . . ''; (3) ''that any sums paid by plaintiff . . . as rental . . . subsequent to the date of exercise of said option . . . be applied to the purchase price . . . ''; (4) for costs of suit; and (5) for other relief.

Richfield's lease had been recorded and the option provided in article 17 thereof was discussed in court during the bidding. No claim is made that respondent Elsam was a purchaser without notice of Richfield's option.

Elsam urges that ''appellant's first refusal option was extinguished when it exercised its rights by meeting the original $21,500 offer which executor had received''; that once said right was extinguished ''appellant was in the same position as any one who purchases real property from an estate'' and ''must protect the sale to him, in the event of any bidding by third parties, by making any necessary additional bids.'' Respondents cite, in support of their contention that Richfield's option had been extinguished, Civil Code, sections 1473 and 1682, and the decision in *Manasse* v. *Ford*, 58 Cal. App. 312 [208 P. 354]. They urge that all of Richfield's rights under the option were extinguished when ''the executor, standing in the shoes of the lessor, by notifying the appellant when it received the original $21,500 offer and giving appellant the opportunity to meet said offer, performed its obligation under the lease.'' The acts of Executor so relied upon by respondents fall far short of the ''full performance'' contemplated by said sections of the Civil Code as the means

of extinguishing an obligation. Lessor's death did not change the terms of his option agreement. (*Southern Pac. Co.* v. *Swanson,* 73 Cal.App. 229, 234 [238 P. 736] ; *Joost* v. *Castel,* 33 Cal.App.2d 138, 140-141 [91 P.2d 172].) However, after lessor's death, his executor lacked the power to bind the estate by his acceptance of the bid of any party without confirmation by the probate court.

In *Manasse* v. *Ford, supra,* the lessee failed to exercise his option to purchase at the price and on the terms offered by another in accordance with the notice of the lessor that it would accept said offer unless lessee elected to buy. The property was so sold by lessor "subject to the lease," the term of which had another year to run. Later the lessee attempted to force the purchaser to sell to him, claiming that the sale having been made "subject to the lease" was also subject to his option to purchase. The option in the Manasse lease included the following language : ". . . and provided further that if the lessee shall not within said period of thirty days elect to purchase the said property, the lessor may then sell the same to such other purchaser subject to this lease and this lease, the conditions, restrictions and covenants thereof shall then be in full force and effect and binding upon the lessee and the purchaser of the said property." After considering the contract in its entirety, it was held in the Manasse case, *supra,* at page 317, that "The intent was to reserve to the lessor the unqualified right after November 6, 1919, to make an absolute sale of the property. This he did, and the resultant conveyance conveyed to the appellants an indefeasible title to the property."

Each option, or other contract, must be so interpreted as to give effect to its own language and to each and every part of it. Because of the provision in article 17 of the lease and option being considered on the instant appeal, that "Irrespective of whether or not said premises are sold to such party, notice of any subsequent bona fide offers acceptable to Lessor shall be given to Lessee upon the same terms and conditions for acceptance or refusal as hereinabove provided, and failure to exercise any option hereunder shall not affect or terminate Lessee's rights under any other option contained in this lease . . . " even if Richfield had failed to exercise its option to buy for $21,500, the decision in the Manasse case, *supra,* is inapplicable to the facts of the instant action.

We are satisfied that, by their lease and option agreement, decedent and Richfield did not intend that compliance with

the terms of the agreement by lessor's notice that it had received and intended to accept a bid, followed by Richfield's notice of its exercise of its option to purchase, should extinguish Richfield's option to buy.

In *Moreno* v. *Blinn,* 81 Cal.App.2d 852 [185 P.2d 332], a lease gave to the lessor permission to sell the leased property, but "giving tenant first right to purchase." When the tenant inquired the price acceptable to lessor, he was told $7,500. Some months later, without notice to the tenant, lessor sold the property to another for $4,500. The buyer, as in the instant action, had actual as well as constructive notice of the lessee's "first right to purchase." When lessee learned of the sale, he served written notice and tender upon both the lessor and the purchaser that he desired to exercise his option and purchase the property. Then he brought an action against both for specific performance. At page 854 of the Moreno case, *supra,* the court said: ". . . The option to buy was intended to mean something, . . . The language used would indicate that he was given an unlimited right to purchase the property if the lessor decided to sell . . . "; and at page 856: "The respondent was given the first right to purchase for the price at which the lessor was willing to sell. That was a matter capable of ascertainment, and it became fixed and determined long before this action was brought." The judgment which was affirmed required that plaintiff-optionee deposit $4,500 in court; that the defendant-purchaser should convey the property to the plaintiff and receive the $4,500; and retained jurisdiction to enter "such further judgment as might be necessary in order to obtain a full conveyance of the property to the plaintiff."

The fact that, in the instant action, the Executor could not sell at any price without confirmation of the sale by the probate court did not change the terms of decedent's contract, but merely delayed the beginning of the time within which Richfield might exercise its option until the sale price was fixed by the probate court.

Richfield, in its closing brief, says: "It is apparent that everyone at the hearing with the exception of the Judge of the Probate Court misconstrued the powers of the Court at that hearing and the Judge appropriately confirmed the sale subject to any rights which appellant might have under the lease. The exercise of those rights was not before the Court."

 Richfield seeks specific performance of its option to purchase land of the decedent in the instant action. The price was not agreed upon and no manner of setting such price was

provided other than the deceased owner's willingness to accept it from any party. After Haskell's death the price at which the property could be sold and the option exercised was controlled by the probate court, which was required to determine the necessity for the sale, or the advantage, benefit, and interest of the estate in having it made, and the fairness of the price bid. (Prob. Code, § 875.)

A similar action to enforce a decedent's option contract was upheld by the Supreme Court in *Bewick* v. *Mecham,* 26 Cal.2d 92, 95 [156 P.2d 757, 157 A.L.R. 1277]. There the plaintiff had an absolute option—not merely a first refusal—to purchase at a price to be fixed by arbitration as specified. Upon the executor's refusal to perform decedent's obligation to appoint an arbitrator, the court (not sitting in probate) determined the price and ordered the executor to convey the property to the optionee. Under the Bewick decision, *supra,* specific performance of decedent's option agreement, about which decedent's executor and his optionee disagreed, was properly sought in a court of equity rather than in the probate court.

Respondent next urges that appellant waived any rights it had to enforce the option clause by its acts and words at the probate sale, partial transcript of which is hereinafter set forth.

"MR. NIEMO (attorney for the Executor): Due to the fact that the present lease provides for refusal, may I ask whether or not a representative of the Richfield Oil Company is in court?

"COURT: Is there a representative of the Richfield Oil Company here?

"MR. WHITE: Yes. My name is Don G. White."

Thereupon Mr. White was called as a witness, duly sworn, and, in answer to questions asked by Mr. Niemo, testified that he, as the manager of the real estate for Richfield, was then acting as Richfield's agent; that he was familiar with the fact that there will be possible overbidding in this court and that he was there to protect Richfield's bid if he so desired.

The bids ranged from $23,000 to $29,600 and were made by Mr. Provisor, bidding for himself, Mr. Joyce for respondent Elsam, Mr. Singer for one Jerome Brownstone, and Mr. White for Richfield. The following is quoted from the transcript of proceedings:

"THE COURT: $24,600. Any further bidding?

"Mr. White: This is the auction right now and the one that bids the highest bid gets it?

"The Court: You have to raise it if you want it.

"Mr. White: The lease provides that I have a right to purchase it at any price that is agreeable.

"The Court: We are auctioning it off in open court and you have to raise it at least one dollar. The one that bids the highest gets it."

Thereafter, between the bids of the others, Mr. White bid $24,650 and $24,750, after which the bidding of the others proceeded to $29,600, and the following colloquy took place.

"Mr. Provisor: If your Honor please, if you confirm the bid I think under the terms that Richfield has the right to only meet the offer.

"The Court: Not in this court. They have to bid it. This is being sold subject to the lease.

"Mr. Provisor: The lease provides that they can meet it.

"Mr. Niemo: You don't care to meet this?

"Mr. White: The lease provides that we have a right to meet it. I am not in a position to—I am not waiving anything.

"Mr. Provisor: I might mention also that there is some question—I think that the position of the Richfield is that they have 20 days from now to meet this bid.

"The Court: I have a petition for confirmation of sale of real property subject to a lease.

"Mr. Provisor: And the lease provides for 20 days.

"The Court: That is not before me. I am selling the property subject to the lease . . . .

"The Court: I am not interpreting that lease. I assure you. I am selling it subject to the lease."

In the instant action the conclusions of law and judgment are based upon the following so-called findings of fact:

"V. That it is true that the plaintiff by its actions, having been duly notified of the hearing on the Return of Sale and Petition for Confirmation of Sale on its bid, and having refused to make a bid equal to or in excess of the bid of Elsam Co., defendant herein, waived its rights under Article 17 of the said Lease, insofar as it concerns the sale of said premises by the Executor to Elsam Co., and that it is true that plaintiff had no right, either under said Article 17 of the Lease or otherwise, insofar as the defendants herein are concerned, to make another and further bid in connection with the said sale to Elsam Co. after the Order of the Court was made con-

firming the said sale to the defendant Elsam Co., a corporation.''

. . . . . . . . . . . . .

''VII. That it is true that the defendants, and either of them, have and had the right to refuse to accept the attempted bid of the plaintiff made after the Order of the Court confirming the sale to Elsam Co., for the reason that the Order of the Court authorizing the said sale was duly, regularly and legally made and that plaintiff has and had waived its rights claimed under Article 17 of the said Lease in connection with said sale to Elsam Co.

''VIII. That it is true that neither of the defendants are obliged or compelled to convey or transfer the aforesaid property to the plaintiff either by reason of its attempted exercise of its alleged right under Article 17 of said Lease, made after the Order of the Probate Court authorizing the sale to Elsam Co., defendant herein, or otherwise or at all.

''IX. That it is true that the plaintiff is foreclosed by the aforesaid Order of the Probate Court confirming the sale to Elsam Co., from exercising its attempt as relates to its bid subsequent to the said Order, and is estopped by its conduct from so doing.

''X. That it is true that the defendant Security-First National Bank of Los Angeles, as Executor of the Estate of William L. Haskell, deceased, has complied fully with the provisions of the Lease and in accordance with the law has complied with all steps necessary and made a Return of Sale on the bid of plaintiff and has duly received the Court's Order authorizing it to convey the said premises to the defendant Elsam Co., subject to the provisions of the Lease, and by said Order is authorized and ordered to convey the said premises to the defendant Elsam Co., upon receipt of the said purchase price of $29,600.00 in cash.''

In support of the waiver so found by the court, respondent in his brief quotes from *Wilson* v. *Brown,* 5 Cal.2d 425, 428 [55 P.2d 485], the following: ''[Lessors] contended upon the trial of the case that the lessees had been offered the opportunity to purchase the premises described in the lease, but had in effect rejected the offer by stating that they did not desire to purchase all of the leased premises. [Lessors] claimed that the lessees stated that they did not desire to buy the dwelling house, but only the premises on which the service station was located. Had this claim been satisfactorily

substantiated upon the trial of the case it would have been a complete defense to the suit by lessees for specific performance of their option.''

In the instant action, there is no evidence, either disputed or undenied, that any agent of Richfield rejected any offer or stated that it did not desire to purchase all of the leased premises in accordance with the terms of the first refusal option. The only offer received by the Executor which could be accepted by him was that of Elsam—the last bid at the auction in the probate court. Almost concurrently therewith, the probate court indicated that, regardless of whether Richfield met Elsam's offer, the sale would be confirmed to Elsam ''subject to the lease.'' Richfield's agent, Mr. White, then said, ''The lease provides that we have a right to meet it (Elsam's bid). I am not in a position to—— I am not waiving anything.'' Richfield's written notice of its election to buy on the same terms offered by Elsam is within the time required by its option agreement.

A waiver is the intentional relinquishment of a known right. Only an existing right may be waived. (*Craig* v. *White*, 187 Cal. 489, 498 [202 P. 648]; *Schultz* v. *Superior Court*, 143 Cal.App.2d 781, 782 [300 P.2d 275].)

Waiver is ordinarily a question of fact. (*Lyons* v. *Brunswick-Balke etc. Co.*, 20 Cal.2d 579, 583 [127 P.2d 924, 141 A.L.R. 1173].) The defense of waiver raises an issue of fact to be decided after a consideration of all the circumstances of the particular case, and is a question primarily for the trial court. (*Hefferan* v. *Freebairn*, 34 Cal.2d 715, 722 [214 P.2d 386, 607]; *Kerr* v. *Reed*, 187 Cal. 409, 414 [202 P. 142].) Unless but one inference can be drawn from the evidence, waiver and estoppel are questions for the jury or the trial court. (*Huttlinger* v. *Far West Enterprises, Inc.*, 131 Cal.App.2d 808, 811 [281 P.2d 554]; *Krobitzsch* v. *Middleton*, 72 Cal.App.2d 804, 815 [165 P.2d 729].)

Where there is evidence that a right has been waived and there is none to the contrary, judgments depending upon the existence of the right so waived have been reversed on appeal. (*Bassi* v. *Bassi*, 89 Cal.App.2d 886, 889 [202 P.2d 96]; *Jones* v. *Sunset Oil Co.*, 118 Cal.App.2d 668, 673 [258 P.2d 510].) In *Chin Ott Wong* v. *Title Ins. & Trust Co.*, 89 Cal.App.2d 183 [200 P.2d 541], judgment for plaintiff was reversed by this court for the reason that the implied finding of the trial court that plaintiff had not waived the provision of the contract making time of the essence was contrary to the undenied allegations of the complaint and that there was no evidence

to support that finding. Petitions for rehearing by this court and for hearing by the Supreme Court were denied.

 There is nothing in the record on the instant appeal to indicate any failure on the part of Richfield to exercise its option according to its express terms. Nor is there any act on the part of Richfield's agent or any statement by him which could have misled the respondents. Title to the leased premises did not pass upon confirmation of the sale by the probate court. (*Estate of Dargie,* 33 Cal.App.2d 148, 155 [91 P.2d 126] and cases there cited.) As stated by the probate court at the hearing of return of sale and petition for confirmation, Richfield's rights under its first refusal option were not then before it and could not be determined by it.

Richfield, under article 17 of its lease, had the right to purchase at the price which could be accepted by the executor, and, not having waived that right, may specifically enforce it. (*Moreno* v. *Blinn, supra.*)

The judgment is reversed, and the trial court is directed to amend its findings of fact, conclusions of law and judgment in accordance with the views herein expressed, and to render judgment accordingly.

Fourt, J., and Drapeau, J.,* concurred.

Respondent's petition for a hearing by the Supreme Court was denied June 4, 1958.

---

*Assigned by Chairman of Judicial Council.