John C. Marbach, J.
This is> an application by defendants for an order, pursuant to CPLK 3211 (subd. [a]), dismissing the cause of action for specific performance for failure to state a cause of action, and for declaratory relief that a clause in the deed relied upon by plaintiff is void as an illegal restraint upon alienation. Plaintiff has cross-moved for an order pursuant to CPLB 3211 (subd. [b]) to dismiss the defenses asserted and for summary judgment.
Plaintiff seeks, on the basis of a deed dated September 18, 1934, to require defendants to convey title to certain property located in Orange County consisting of 17.3 acres on which is located a one-family house, now owned by defendants as tenants-in-common, for the consideration of $2,000. Plaintiff relies on an option clause in the said deed[1] which states as follows: “ That the grantor herein, namely hyacinth a. r. jahr or her heirs or assigns, shall have the first option to re-purchase the within described premises at any time the grantee or his heirs *288 or assigns may offer the within described premises for sale, and the said hyacinth a. r. jahr, or her heirs and assigns may purchase same for a sum not more than Two Thousand Dollars ($2,000.00) ”.
Plaintiff is the sole heir of Hyacinth A. R. Jahr. Defendants inherited the property through Francis Richard Jahr, the grantee in the above-mentioned deed, who died on April 5, 1935. These facts are not disputed.
In early 1970, three of the defendants met with an appraiser representing the County of Orange, who stated that the county wished to purchase their land for the purpose of a future reservoir for ;the price of $26,000. Defendants were informed that, if they refused to sell, the county would then condemn the land with the possibility of lengthy litigation. After discussions among all four defendants, it was agreed that they would give an option to the county to purchase the land for $26,000 which option was exercised by the county pursuant to section 215 of the County Law in May, 1970. Although it is not conclusively established in the papers, it appears that title has not yet passed to the county.
On January 18, 1971, the plaintiff’s attorney wrote to the defendants advising them of plaintiff’s desire to exercise her rights to purchase the property for $2,000. In reply, defendants ’ attorney stated defendants had not “ offered the premises for sale ’ ’ and thus, the offer to purchase was premature and invalid.
Plaintiff contends that the actions of the defendants and the county amount to an offer to purchase in the form of the grant of an option to the county for a valuable consideration, which entitles her to exercise her option as an heir of the grantor. On the other hand, defendant argues that this transaction constituted a condemnation, precipitated by the county and certainly was not a voluntary offer to sell as contemplated by the option clause in the deed. Whatever may be the relative merits of these positions, in light of the recognized principle that in a legal sense the taking of land by condemnation operates as a sale or purchase thereof (Vandermulen v. Vandermulen, 108 N. Y. 195; 19 N. Y. Jur., Eminent Domain, § 4), the initial hurdle is whether the option clause in the deed is void as an indefinite suspension of the power of alienation or a restraint upon alienation.
Defendant argues that the option clause violates the rule of perpetuities in that it suspended the alienation of land for an indefinite period, citing EPTL 9-1.1. That position is clearly not the law of this State. In Matter of City of New York (Upper N. Y. Bay) (246 N. Y. 1, 30), in answer to this same argument, *289 the court stated: “ We have never gone so far in this State as to hold that an option to buy property any time within a definite period of years is a suspension of the power of alienation. Any fixed, definite time which suspends alienation is a violation of our statute which fixes two lives in being as the limit, but an option to buy does not come within the rule ’ ’.
The principle upon which this result is predicated is that during the indefinite life of the option, there are always lives in being, the optionee and the owner, or their successors, who can convey the fee (Blankman v. Great Western Food Distrs., 57 Misc 2d 754; Matter of Quigley, 37 Misc 2d 320; Matter of Abbondondolo, 10 Misc 2d 418). The case at bar is no exception.
A more intriguing concern arises in connection with that body of law prohibiting restraints upon alienation. The ,two principles should not be confused. A restraint against alienation is distinct in both purpose and result from the rule against perpetuities (45 N. Y. Jur, Perpetuities and Restraints on Alienation, § 62), although similar in that they both represent the public policy of the State (id.; see, also, 1 Rasch, Real Property Law and Practice, § 520, p. 320).
In this instance, the restraint is said to arise from the marked disparity between the fixed price in the option clause, $2,000, and the alleged market value of the property, $26,000. The practical effect of the pre-emption option with a fixed price is to retard the owners’ desire to sell, as assuredly the sale will be made at a substantial sacrifice if the option is exercised. Viewed in the historical light of the last few decades of soaring real estate values, not to mention the impact of inflation alone, the fixed price, although perhaps initially reflective of present value, soon becomes burdensome and eventually oppressive. Under such circumstances, what purpose or benefit (aside from the more obvious windfall to the optionee or his successors) is achieved by promoting such clauses through their sanction, which could possibly balance the economic distress to the landowner[1]?
The problem is by no means, novel. The subject is explored and .the authorities collected in Simes and Smith, Law of Future Interests (2d ed., § 1154) and annotated in Perpetuities-Option to Purchase (162 A. L. R. 581). From these sources, the court has culled three citations of fairly recent origin, closely approximating the factual circumstances to those at bar, which reflect the divergent views adopted on the subject. In Lantis v. Cook (342 Mich. 347 [1955]) (noted in 54 Mich. L. Rev. 287) the majority upheld the option, finding a distinction between a true pre-emptive provision, i.e., a first right to buy option to arise *290 only if the optionors desire to sell, and an option arising on a condition precedent. In Lantis, according to the majority, the latter existed, as the option became operative when the optionors “ did not wish to nse the property as a home.” Such subtle distinctions lack reality. Perhaps a more accurate synopsis of the majority’s position lies in their finding that the primary purpose of the clause, quoting from Simes, Future Interests (vol. 2, § 462) “is to enable a particular person to buy, not to prevent any one from selling”. However, in the majority opinion scant note was taken of the disparity between the option fixed price, $4,000, and the current value of the property, $12,000 while the dissent concluded from these figures that the option was ‘ ‘ as effective a restraint as any direct restraint and should be so considered ”.
On the other hand, Ross v. Ponemon (109 N. J. Super. 363) and Missouri State Highway Comm. v. Stone (311 S. W. 2d 588 [Mo. App. 1958]), the latter involving a claim of right to proceeds from condemnation, followed the view of the Restatement of the Law of Property (§ 413 [1944]) also found in American Law of Property (vol. 6, § 26.66 [1952]) that any pre-emption fixed price which fails to allow for future increases in value acts as a restraint upon alienation. In Ross, the differential amounted to $30,000 while in Stone, a $10,000 difference represented half of the property’s market value.
"While these authorities as a perspective, the court turns to New York law. Cases close on point are scarce. In Garcia v. Callender (125 N. Y. 307) in an action for specific performance of a pre-emption covenant in a deed, the court concluded that the covenant ought to be construed in some other way than to allow the plaintiff to tender $12,000 and thereby force a conveyance to him' of property worth $28,000. It stated in upholding the dismissal of the complaint that the clause meant: “not that the grantor could at any time require a reconveyance on tendering $12,000, hut that when the owner desired to sell the property or offered it for .sale or when it was put upon the market again at the price of $12,000, then the grantor should have the first right of purchase or the option to buy it in preference to anyone else at that price.” The trial court had found that the property owner had not offered the property for sale. Therefore, the result in Garcia was sound because the plaintiff was seeking to enforce a pre-emption clause as if it were a true option.
Accordingly, Garcia is not a true authority on the question of whether such a clause constitutes a restraint upon alienation although the issue was raised by respondent. Nevertheless, it *291 expresses a repugnance to the inequities of circumstances similar to those underlying the restatement’s position upon fixed price option clauses unlimited in time. In another case, Matter of City of New York (Upper N. Y. Bay) (246 N. Y. 1, supra), the issue was again skirted in a case where the city retained the right to repurchase certain lands under water from the patentee upon paying to the patentee the original amount paid together with the patentee’s expenses in acquiring the property which were fixed at $350 plus the value of any improvements made. There the court held that the option was valid under the Eule against Perpetuities, but did not address itself to the fixed price aspect of the option.
On the other hand, an option indefinite in time which fixed the option price at property’s market value was held not to constitute a restraint upon alienation, in Matter of Abbondondolo (10 Misc 2d 418, supra).
Defendant herein relies heavily upon a true “ chestnut” in the area of restraints upon alienation (De Peyster v. Michael, 6 N. Y. 467). In that case the clause in question was contained in a deed of conveyance known as a “ lease in fee ’ ’ which the court held created a fee simple estate subject only to the payment of rents reserved (p. 497). However, although the lessee or his heirs had the power to convey, it was provided that whenever he or his heirs decided to sell, they must first offer the property to the lessor or his heirs who would have the option to purchase at the price requested, less one fourth of that price, representing a.n interest previously reserved by the grantor. It also stated that in the event the lessor chose not to purchase, he or his heirs would still be entitled to one fourth of the purchase price upon any subsequent sale, lease, etc. to others. Plaintiff claimed that a portion of the land had been sold without payment of a quarter of the sale money. The sole question was whether the condition in the lease to pay quarter sales was valid or void.
The argument was advanced .in Be Peyster that the clause was valid because it was not an absolute and entire restraint upon alienation; valid conveyances could be and were effected. This, not surprisingly, is the ‘1 primary purpose ’ ’ test relied upon by the court in Lantis v. Cook (342 Mich. 347, supra) in upholding the fixed price option. Nevertheless, the court in Be Peyster characterized the clause as one that impaired the value of the lands in the hands of the grantee, the principle forming the basis of the Eestatement of the Law of Property (supra), and relied upon in cases striking down options indefinite in time with a fixed price.
*292 The issue of a possible restraint upon alienation was considered in relation to a “ close corporation’s” restriction on the sale of its stock by the shareholders in Allen v. Biltmore Tissue Corp. (2 N Y 2d 534). There, the corporate by-laws contained a provision granting to the corporation the first right to purchase during the life or in case of death of the shareholder at the original purchase price. The option in the case of a lifetime sale was to last for 60 days; in the case of death, 90 days. The original purchase price was $5. Although the decision in Allen does not indicate what the market value of the stock was at the time of the corporation’s exercise of the option upon plaintiff’s death, the corporation in disregard of the by-laws offered to purchase the shares at $20 apiece.
The Court of Appeals in upholding the validity of the restriction not only espoused the “ primary purpose ” test in ruling on a question of possible restraint upon alienation, but also held that the unreasonableness or unfairness of the price, by virtue of its disparity with current value, could not support a conclusion that the restriction was invalid. The court concluded that to hold otherwise would encourage expensive litigation wherever the price specified in the restriction was other than a recognized and easily ascertainable fair market value and also could destroy part of the social utility of the first option type restriction, which is intended to operate in futuro (pp. 542-543).
Allen v. Biltmore Tissue Corp. (supra) is, to be sure, factually distinguishable from the ease at bar. In Allen there was a valid business purpose sought to be achieved by the restriction, a purpose sanctioned by legislative authority in the then Personal Property and Stock Transfer Laws which permitted such restrictions provided certain conditions were satisfied. Although recognizing that the transferability of shares is a property right, thus, subject to the policy of restraints upon alienation, the court in Allen noted, on the authority of Penthouse Props. v. 1158 Fifth Ave. (256 App. Div. 685) that restrictions on the sale of .stock have been consistently held not to be repugnant to the principle unless the restraint is unreasonable. The court was persuaded by the ability to sell the stock despite the restriction, especially in view of the 90-day period limitation upon the corporation’s right to exercise the option.
Up to this point, Allen is consistent with what appears to be the majority position on this subject, that validity or invalidity is dependent upon the reasonableness of the restraint considering its purpose, duration and method of determining price, Missouri State Highway Comm. v. Stone (311 S. W. 2d 588, *293 supra). However, whereas Stone reached the result that a fixed price constitutes a direct restraint where the value of the property has enhanced in value, the Court of Appeals in Allen (2 N Y 2d 534, 543, supra) concluded that: ‘1 the validity of the restriction on transfer does not rest on any abstract notion of intrinsic fairness of price ’ ’.
Should that proposition be universally applied to the instant case? The court thinks not. As was noted in Phoenix Ins. Co. v. Guthiel (2 N Y 2d 584, 588) although the soundness of the law enunciated as applied to the circumstances and facts giving rise to the litigation in each case cannot be questioned, “it is the application of the governing facts which support the legal principle .therein ’ ’ which controls. Here, sound public policy dictates that the clause he held invalid and void, for not only is there great disparity in the option price and the property’s market value, but also no compelling purpose justified its imposition or now its enforcement. Not insignificantly, the clause is also unlimited in duration.
Moreover, on the facts of this case, the court also concludes that the option has not become operative by virtue of the taking of this property by the county for public use through condemnation. There has been no offer for sale by the present owners. Rather, there has been an involuntary taking. Plaintiff’s argument, that proceedings in condemnation have been held to constitute a sale and purchase, is not controlling. The question really is whether the owners voluntarily offered the property for sale. That is the only reasonable construction that can be given to the language in the option before the court so as to permit its exercise. A first refusal right comes into play only when the owner offers the premises to others and is not applicable to judicial sale (Blankman v. Great Western Food Distrs., 57 Misc 2d 754; see, also, First Refusal Option — Foreclosure or other Involuntary Sale, 17 ALR 3d 962). Similarly, the involuntary nature of condemnation precludes its application in this instance. The attempt to distinguish this transaction from a true condemnation because here the county purchased the property rather than condemning it, is without substance'. There is no distinction between a statutory conveyance through condemnation and a voluntary conveyance made for public use. (Story v. New York El. R. R. Co., 90 N. Y. 122, 172; Mitchell v. Einstein, 42 Misc. 358, revd. on other grounds 105 App. Div. 413.)
Accordingly, defendants’ motion to dismiss the complaint is granted and plaintiff’s cross motion is denied.

. Technically the quoted clause is properly called a "pre-emption” which differs from a true option in that it does not give the pre-emptioner a right to force a conveyance, but only requires the owner who desires to sell to offer the property first to the person entitled to the pre-emption. (6 American Law of Property, § 26.64.)