[No. B115217. Second Dist., Div. Six. Apr. 7, 1999.]

DANIEL M. CAMPBELL, Plaintiff and Appellant, v.
JAMES R. ALGER et al., Defendants and Respondents.

## COUNSEL

Crosby, Heafey, Roach & May, M. Reed Hunter, Kathy M. Banke and Benjamin G. Shatz for Plaintiff and Appellant.

James L. McBride, County Counsel, Dennis L. Slivinski and Robert R. Orellana, Assistant County Counsel, for Defendants and Respondents.

## OPINION

**BURKE, J.**\*—Here we hold that when a public entity condemns land for a public purpose, a private party's right of first refusal to purchase the

---

*Judge of the San Luis Obispo Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

property is not triggered. Condemnation is an involuntary taking preempting the private contractual right in the instant cotenant agreement. The right of first refusal is triggered only by a voluntary determination to sell in the absence of public need.

Daniel M. Campbell (Campbell) appeals from the judgments after the trial court sustained the demurrer of respondent Ventura County Flood Control District (District) to his first amended complaint without leave to amend and after it accepted the stipulation for dismissal as to the Alger respondents (the Algers).[1] We affirm the judgments.

FACTS

In June 1974, Campbell and respondent James R. Alger (Alger) purchased the Grubb Ranch, each owning an undivided one-half interest in the property as tenants in common. The Grubb Ranch contains scarce, valuable aggregate. Campbell owns Truestone Concrete Products, Incorporated, which sells building materials including ones made from aggregate.

In February 1980, Campbell, Alger and others entered into an agreement stating, in pertinent part, "In the event [Campbell or Alger] . . . determines to sell his . . . interest in . . . [the Grubb Ranch] to a third party after having received a bona fide and written offer for such purchase, . . . the selling party may do so only after first offering to sell his . . . interest to the other parties to this agreement. The selling party . . . shall send . . . a written notice to the other parties [to this agreement] outlining the terms and conditions of the proposed sale. The nonselling party . . . shall within thirty (30) days after receipt of such notice, send written notice to the selling party . . . of its election to purchase the selling parties' interest upon terms and conditions as set forth in the notice."[2]

On January 31, 1996, District sent a letter to counsel for the parties stating its interest in acquiring the Grubb Ranch for flood control purposes for the sum of $2,357,000, pursuant to its appraisal.

On March 26, 1996, District instituted an eminent domain action against Campbell and the Algers to condemn Grubb Ranch for flood control purposes. Campbell and the Algers retained a law firm to oppose the action, but the parties abandoned their joint defense. On April 8, 1996, the trial court ordered District to take possession, effective August 7, 1996.

---

[1] The Alger respondents are James R. Alger; Judith B. Goldwater; Valerie M. Kiunke; Alger Family Revocable Trust dated May 16, 1986; Alger Family Irrevocable B-Trust; and Alger Survivor's Trust A-Trust.

[2] Alger assigned his interest in the Grubb Ranch to himself, Judith B. Goldwater and Valerie M. Kiunke, as trustees of the Alger family trusts.

On June 6, 1996, through new counsel, the Algers sent a letter to Campbell's counsel stating that "the Alger family is prepared to sell all of its members' interests in [the Grubb Ranch] subject to [the eminent domain proceeding] to [Campbell], and prefers a straight purchase and sale . . . . In the alternative, they [the Algers] are prepared to enter into an exchange that leaves [Campbell] as sole owner[] of the Grubb Ranch . . . ." The Algers proposed an immediate sale of its interest to Campbell for the net sum of $1,178,500, half the amount stated as the probable fair market value in District's summary appraisal.

In July 1996, Campbell allegedly learned that the Algers had been secretly negotiating with District for several months to relinquish their interest in the Grubb Ranch to District. Campbell reminded the Algers and notified District of his right of first refusal. His letter to District of July 16, 1996, stated his intention to exercise the right.

By letter of July 29, 1996, the Algers allegedly first informed Campbell of District's offer to purchase the Grubb Ranch. By letter of August 2, 1996, the Algers informed Campbell of their intention to settle District's eminent domain action on September 9, 1996, according to the terms of the stipulation for judgment in condemnation executed between District and the Algers' interests on July 18, 1996.

The August 2 letter explained that although the Algers understood Campbell's reason for fighting the eminent domain proceeding, they chose to stipulate to judgment of condemnation. The Algers stood to lose less than Campbell. The Algers desired to take advantage of favorable tax treatment by dealing directly with District, without risking a tax audit or embroiling themselves in lengthy, costly eminent domain proceedings. The letter stated that "they do not feel that, under the present circumstances, they are bound by any . . . agreement . . . to either sell their . . . interest to [Campbell], or refrain from settling directly with the District."

The Algers reserved their right to contest whether the right of first refusal contained in the cotenant agreement is applicable. They argued that the preemptive right of first refusal is ineffective where there is an involuntary taking by condemnation. (*Kowalsky* v. *Familia* (1972) 71 Misc.2d 287 [336 N.Y.S.2d 37, 43]; *Pearson* v. *Schubach* (1988) 52 Wn.App. 716, 720 [763 P.2d 834, 836]; *Henderson* v. *Millis* (Iowa 1985) 373 N.W.2d 497, 503.)

The Algers explained that they would not object if Campbell sought to delay the settlement through injunctive or other pendente lite relief. The Algers still did not rule out the possibility of selling directly to Campbell for

the same net sum proposed by District. District took possession of the property August 7, 1996, pursuant to the prior order of the court.

By letters of August 13 and 28, 1996, Campbell offered to purchase the Algers' interest in the Grubb Ranch for the same net sum as would result from the eminent domain settlement, reserving his rights under the cotenant agreement. Campbell stated that he disagreed with the Algers' assessment of the law. On August 29, 1996, the Algers declined Campbell's offer, stated that the decision was final, but enabled Campbell to seek injunctive relief by delaying the settlement date until at least September 9, 1996. The Algers reiterated their position that the stipulation for settlement in the eminent domain proceeding does not constitute their determination to sell or an offer for sale which would trigger the right of first refusal claimed by Campbell under the cotenant agreement.

On September 5, 1996, Campbell filed the instant suit to enforce the right of first refusal and he recorded a lis pendens on the property. District entered into judgment of condemnation with the Algers on October 3, 1996. Although Campbell was a party to the condemnation proceeding, he did not challenge the stipulated judgment of condemnation. Campbell contends that the stipulated settlement constitutes a sale for purposes of his right under the cotenant agreement.

The trial court denied Campbell's motion to compel arbitration and overruled the Algers' demurrer. Campbell filed the instant first amended complaint, naming the District as a party defendant. Campbell unsuccessfully sought to consolidate this action with the eminent domain proceeding.

The trial court sustained District's demurrer to the instant complaint without leave to amend on all causes of action against it and entered judgment of dismissal as to District. The Algers did not join in District's demurrer. Trial was set for August 18, 1997, against the Algers.

By stipulation and order, the parties deemed that District's demurrer had been filed by the Algers and that it had been sustained without leave as to applicable causes of action. The parties deemed that the trial court had concluded that District's effort to settle the eminent domain action did not trigger the right of first refusal as a matter of law as to the Algers. "[T]o avoid the time and expense associated with the trial of the issues presented in the action . . . until such time as the issues regarding the efficacy of the right of first refusal in the context of an eminent domain proceeding are finally determined through appellate review," Campbell agreed to stipulate to dismiss the other causes of action without prejudice pending remittitur from the Court of Appeal.

The trial court entered judgment of dismissal as to the Algers based on the stipulation and its order so that Campbell could perfect his appeal regarding the Algers. The parties filed voluntary requests for dismissal without prejudice and judgment of dismissal was entered as to the Algers. Campbell appeals from the judgments.

## DISCUSSION

### Whether the Algers' Judgment Is Appealable

■ The judgment as to District is appealable as a final judgment. District argues that the judgment as to the Algers is not appealable because it is not a final judgment on all causes of action. (*Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 743-744 [29 Cal.Rptr.2d 804, 872 P.2d 143]; *Four Point Entertainment, Inc. v. New World Entertainment, Ltd.* (1997) 60 Cal.App.4th 79, 82-83 [70 Cal.Rptr.2d 82]; *Jackson v. Wells Fargo Bank* (1997) 54 Cal.App.4th 240, 243-245 [62 Cal.Rptr.2d 679]; *Don Jose's Restaurant, Inc. v. Truck Ins. Exchange* (1997) 53 Cal.App.4th 115, 116-118 [61 Cal.Rptr.2d 370].)

The stipulation expressly postpones trial of issues on three causes of action between Campbell and the Algers. Parties may not create appellate jurisdiction by stipulation. (See *Four Point Entertainment, Inc. v. New World Entertainment, Ltd.*, *supra*, 60 Cal.App.4th at p. 82; *Don Jose's Restaurant, Inc. v. Truck Ins. Exchange*, *supra*, 53 Cal.App.4th at pp. 118-119.)

Nonetheless, all the parties seek review of the issue of whether the right of first refusal survives the judgment in condemnation. The matter has been fully briefed. It would not serve justice to decide this issue of first impression only as to District. We therefore treat the appeal as a writ and determine the question presented on its merits as to all parties before us. (*Morehart v. County of Santa Barbara*, *supra*, 7 Cal.4th at pp. 744-745; *Olson v. Cory* (1983) 35 Cal.3d 390, 401 [197 Cal.Rptr. 843, 673 P.2d 720].)

### Right of First Refusal in Light of Condemnation

■ A right of first refusal is the "conditional right to acquire . . . property, depending on the [owner's] willingness to sell." (6 Miller & Starr, Cal. Real Estate (2d ed. 1989) § 18:110, p. 317.) The holder of the right merely has the preference to purchase the property over other purchasers if the owner of the property "elects to sell the property." (*Ibid.*) The right does not become an option to purchase until the owner of the property voluntarily decides to sell the property and receives a bona fide offer to purchase it from

a third party. (*Id.*, at pp. 322-323; *Rollins* v. *Stokes* (1981) 123 Cal.App.3d 701, 710 [176 Cal.Rptr. 835].) Normally, the right is enforceable against third persons entering into a contract to buy the property with notice of the holder's right. (6 Miller & Starr, *supra*, at p. 318.)

The particular facts and circumstances that give effect to the right depend on the particular terms of the contract for the right. (6 Miller & Starr, Cal. Real Estate, *supra*, § 18:110, p. 318.) Normally, attempts to sell the property to a third party without adequate notice and opportunity to exercise the preemptive right of first refusal constitute breach of contract enforceable by specific performance. (*Id.*, at p. 319.)

Here the right of first refusal would arise only "[i]n the event . . . [the Algers] . . . determine[] to sell [their] . . . interest . . . to a third party after having received a bona fide and written offer for such purchase, or make[] a bona fide and written offer to sell [their] . . . interest to a third party . . . ." The right did not arise here. The Algers did not voluntarily determine to sell their interest to District. Pursuant to a resolution of necessity, District condemned the property for public use—a flood control project—and sued in eminent domain.

The effect of condemnation on the right of first refusal is an issue of first impression in California. The closest case nationwide to the facts and circumstances presented here appears to be *Kowalsky* v. *Familia*, *supra*, 336 N.Y.S.2d 37. We find it persuasive.

In *Kowalsky*, the defendants owned property as tenants in common. A 1934 deed to the property contained a clause in favor of the plaintiff which states, in pertinent part, " '[T]he grantor . . . shall have the first option to re-purchase the . . . premises at any time the grantee . . . may offer the . . . premises for sale, and the [grantor] . . . may purchase same for a sum not more than Two Thousand Dollars ($2,000.00).' " (*Kowalsky* v. *Familia*, *supra*, 336 N.Y.S.2d at p. 38.)

In 1970, the defendants met with a county appraiser who informed them that the county desired to purchase the land for a future reservoir for $26,000. The appraiser told them that if they refused to sell, the county would condemn the land with the possibility of lengthy litigation. (*Kowalsky* v. *Familia*, *supra*, 336 N.Y.S.2d at p. 38.) The defendants agreed to give an option to purchase to the county for $26,000, and the county exercised it.

In 1971, the plaintiff advised the defendants that she desired to exercise her right to repurchase the property for $2,000 pursuant to the clause in the

1934 deed. The defendants replied that they had not offered the premises for sale. The transaction "constituted a condemnation, precipitated by the County and certainly was not a voluntary offer to sell as contemplated by the option clause in the deed." (*Kowalsky* v. *Familia*, *supra*, 336 N.Y.S.2d at pp. 38-39.)

The *Kowalsky* court considered the question of whether the exercise of the right to repurchase in 1971 for the fixed price of $2,000 would amount to a restrain on alienation. It held that "sound public policy dictates that the clause be held invalid and void" because of the great disparity between the option price and current fair market value and because no compelling purpose justifies imposing or enforcing a clause indefinite in duration. (*Kowalsky* v. *Familia*, *supra*, 336 N.Y.S.2d at p. 43.)

"Moreover, on the facts of this case, the court also concludes that the option has not become operative by virtue of the taking of this property by the county for public use through condemnation. There has been no offer for sale by the present owners. Rather, there has been an involuntary taking. Plaintiff's argument that proceedings in condemnation have been held to constitute a sale and purchase is not controlling. The question really is whether the owners voluntarily offered the property for sale." (*Kowalsky* v. *Familia*, *supra*, 336 N.Y.S.2d at p. 43.) "A first refusal right comes into play only when the owner offers the premises to others and is not applicable to judicial sale." (*Ibid.*) "Similarly, the involuntary nature of condemnation precludes its application in this instance. The attempt to distinguish this transaction from a true condemnation because here the county purchased the property rather than condemning it, is without substance. There is no distinction between a statutory conveyance through condemnation and a voluntary conveyance made for public use. [Citations.]" (*Id.*, at pp. 43-44; and see generally, *Pearson* v. *Schubach*, *supra*, 52 Wn.App. at p. 720 [763 P.2d at p. 837]; *Henderson* v. *Millis*, *supra*, 373 N.W.2d at p. 503; *Colby* v. *Colby* (1990) 157 Vt. 233, 240 [596 A.2d 901, 905]; *Draper* v. *Gochman* (Tex. 1966) 400 S.W.2d 545, 547 [17 A.L.R.3d 953].) So it is here.

District informed Campbell and the Algers it needed to acquire the Grubb Ranch and instituted an eminent domain action. The trial court ruled that District had the right to possession. At first, both Campbell and the Algers fought the action. The Algers decided to acquiesce and stipulate to judgment rather than to engage in costly and lengthy eminent domain proceedings. Because condemnation is the involuntary taking of land by a public agency for public use, it does not trigger the private right of first refusal here.

Campbell's reliance on *Richfield Oil* v. *Security-First Nat. Bank* (1958) 159 Cal.App.2d 184 [323 P.2d 834] is misplaced. Richfield held a lease and

a right of first refusal in property. The owner of the property died. The executor notified Richfield that a private third party had made an offer to purchase the property. Richfield notified the executor that it would match the offer. The executor sought judicial confirmation in probate court as required by statute. (*Id.*, at pp. 187, 189.)

Richfield was present in court to bid on the property. The probate court accepted the highest bid, made by a third party, subject to Richfield's lease. Richfield sought to exercise its right of first refusal after the court confirmed the probate sale. Richfield sued the executor and the purchaser for declaratory relief and specific performance. The Court of Appeal determined that although the executor was required to obtain judicial confirmation after bid, Richfield's right of first refusal survived the sale in probate court.

The appellate court explained that the probate court appropriately confirmed the sale to the highest bidder subject to all the terms of Richfield's lease. (*Richfield Oil* v. *Security-First Nat. Bank, supra*, 159 Cal.App.2d at p. 194.) The probate court expressly refrained from interpreting the lease, which was not before it. (*Id.*, at pp. 192, 195.) Thus, the statutory probate bid process merely delayed the time for Richfield to exercise its right. (*Id.*, at p. 190; accord, *Estate of Quackenbush* (1975) 53 Cal.App.3d 751 [125 Cal.Rptr. 832] [owner of right of first refusal may not obtain specific performance as to first offer subject to probate sale, but the right is not extinguished; it is simply subject to highest bid in probate court].)

Private probate sales are not akin to condemnation. The purpose of condemnation is to ensure that public entities obtain land needed for public purposes to benefit the community. Public entities have the right and the duty to act swiftly in condemnation proceedings for the public health, safety and welfare. (See Gov. Code, § 7267 et seq.) And land is not fungible. Public entities may not simply go to another vender for the same or similar widgets such as paper clips.

■ The Legislature has provided that if a public entity is forced into eminent domain litigation, it should settle with as many owners as swiftly as possible to minimize the costs, uncertainties and time to obtain such needed land. Private holders of rights of first refusal may not thwart such public purposes by forcing the owner or the subsequent public entity to sell it to them. (Gov. Code, § 7267.2; *Melamed* v. *City of Long Beach* (1993) 15 Cal.App.4th 70, 81-83 [18 Cal.Rptr.2d 729].)

■ Here District determined to acquire the property at issue by condemnation for flood control—a clear public purpose. It notified the parties of

its intent, obtained the right to possession and filed a complaint in eminent domain against Campbell and the Algers. After initially opposing condemnation, the Algers chose to salvage their situation by stipulating to judgment in the eminent domain action. The Algers acknowledged to Campbell that he had more to lose; Campbell owned the land because it contains aggregate needed for his business.

The Algers repeatedly provided Campbell the opportunity to test his right of first refusal by injunctive challenge to the condemnation action and unilaterally delayed entry of the stipulated judgment in settlement of condemnation. Indeed, all concerned stipulated to hold other issues in abeyance so that this court could decide this issue of first impression without undue delay.

Campbell argues that the Algers and the District engaged in subterfuge, artifice and semantics to thwart his rights by denominating the underlying matter as a judgment in settlement of condemnation. We disagree. It is disingenuous of Campbell to suggest that cases concerning true subterfuges of statutory schemes, such as those meant to protect workers seeking compensation for injuries or wages, apply here. (Cf. *S. G. Borello & Sons, Inc.* v. *Department of Industrial Relations* (1989) 48 Cal.3d 341 [256 Cal.Rptr. 543, 769 P.2d 399]; *Gonzalez* v. *Workers' Comp. Appeals Bd.* (1996) 46 Cal.App.4th 1584 [54 Cal.Rptr.2d 308]; *Della Penna* v. *Toyota Motor Sales, U.S.A., Inc.* (1995) 11 Cal.4th 376 [45 Cal.Rptr.2d 436, 902 P.2d 740].) Such cases are completely inapposite. Cases concerning legislative impairment of contract, cited by Campbell, also have no application here.

Campbell's right of first refusal is preempted by condemnation. Our opinion today is limited to condemnation proceedings. We need not consider whether there are additional bases to affirm the judgments. Campbell's sole remedy is just compensation in the eminent domain proceedings.

The judgments are affirmed. The parties are to bear their own costs.

Gilbert, Acting P. J., and Yegan, J., concurred.

On May 6, 1999, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied July 14, 1999.