[No. B141831. Second Dist., Div. Two. Dec. 20, 2000.]

GARY MORGAN et al., Plaintiffs and Appellants, v.
CITY OF LOS ANGELES BOARD OF PENSION COMMISSIONERS,
Defendant and Respondent;
CITY OF LOS ANGELES, Real Party in Interest and Respondent.

## COUNSEL

Silver, Hadden, & Silver and Stephen H. Silver for Plaintiffs and Appellants.

James K. Hahn, City Attorney, Donna Weisz Jones, Assistant City Attorney, and Mary Jo Curwen, Deputy City Attorney, for Defendant and Respondent and for Real Party in Interest and Respondent.

## OPINION

**TODD, J.**—Appellants, current and retired Los Angeles Police Department officers, seek inclusion of certain uniform field assignment incentive pay (Incentive Pay) in the base upon which their pensions are calculated. This Incentive Pay was created by a memorandum of understanding (MOU) negotiated between the Police Protective League (representing appellants) and the City of Los Angeles, and expressly provides that it is not to be pension-based. Appellants contend that the Incentive Pay is "Special Pay" and/or "Assignment Pay" as defined in the Los Angeles City Charter, and consequently under the charter is required to be pension-based. We find that the Incentive Pay is neither Special Pay nor Assignment Pay as defined by the city charter, and affirm the trial court's denial of appellants' petition for writ of mandate.

### FACTUAL AND PROCEDURAL HISTORY

*The Pension Plans*

*The New Pension System*

Appellants Morgan and Preciado are members of the "New Pension System," which is set forth in article XVIII of the city charter,[1] section 190.01 et seq. The New Pension System was established in 1967, and includes police officers hired between its enactment and 1980, when a new plan was adopted. System members are entitled to a pension, based on the "Normal Pension Base" as defined in city charter section 190.02, subdivision (s), to be "the sum of: (1) his monthly salary; (2) any length of service pay which he had received immediately preceding the date of his retirement or

---

[1]All references herein are to the governing provision of the City of Los Angeles Charter prior to July 1, 2000.

The charter was amended July 1, 2000; article XVIII is now tier 2 of the Fire and Police Pension Plans; article XXXV now consists of tiers 3 and 4 of the Fire and Police Pension Plans. The amendment did not change the definitions of Special Pay and Assignment Pay at issue in this matter.

death or upon the last day he had performed duties as a Department Member; (3) any special pay which he had received immediately preceding the date of his retirement or death . . . and (4) any hazard pay . . . ."

Charter section 190.02, subdivision (r-2), provides that Assignment Pay, as defined in the subdivision, shall be included in the pension base to the same extent and upon the same conditions as "Hazard Pay."

*Safety Members' Pension Plan*

Appellant Jones is a member of the "Safety Members Pension Plan" (the Plan), which appears in article XXXV, section 520 et seq. of the charter. The Plan was created in 1980 and applies to all police officers hired after that date. Plan members are entitled to a pension based upon "Final Average Salary" (the "pension base") as defined in charter section 521, subdivision (n) to be: "an amount equivalent to a monthly average of salary actually received during any twelve (12) consecutive months of service as a Plan Member as designated by the Plan Member. . . ." Paragraph 4 of this subdivision states: "Included in the calculation of Final Average Salary shall be Length of Service Pay, Special Pay Assignment Pay, and Hazard Pay actually received during the twelve (12) consecutive months used to determine Final Average Salary. . . ."

*The Pension Board*

The City of Los Angeles Board of Pension Commissioners is vested with the responsibility and authority to administer the Plan (charter, art. XXXV, § 520), including the predecessor New Pension System. (Charter, § 524.)

*Memorandum of Understanding*

Appellants' wages, hours, and other conditions and terms of employment are determined as a result of negotiations memorialized in an MOU between their collective bargaining agent and the city. (Gov. Code, § 3504.) A member of an employee bargaining unit is bound by the terms of a collective bargaining agreement, even though the member is not formally a party to the agreement, and may not even belong to the union which negotiated it. (*Relyea v. Ventura County Fire Protection Dist.* (1992) 2 Cal.App.4th 875, 882 [3 Cal.Rptr.2d 614].)

MOU No. 24 between the league (representing the bargaining unit of police officers, lieutenant rank and below) and the city was entered into on July 31, 1996, for the period from July 1, 1996, to June 30, 2000. Article 5.4

of the MOU provides that the city will pay eligible members of the unit 2 percent of their base salary as a form of non-pension-based compensation denominated "Uniform Field Assignment Incentive."[2] To be eligible for the Incentive Pay, an officer must be subject to the MOU and be "assigned to a division or other organizational component which works in the field in uniform." No provision in the MOU identifies the Incentive Pay as either Special Pay or Assignment Pay, terms which are discussed below. Approximately 5,000 of 9,000 officers in the bargaining unit receive the Incentive Pay and no pension contributions are deducted from it, because it is designated non-pension-based.

Article 1.7 of the MOU states that if any article, part, or provision is in conflict with or inconsistent with any charter provision, that article, part, or provision shall be severed, suspended and superceded.[3]

---

[2]"Article 5.4 **Uniform Field Assignment Incentive:**

"A. Operative July 1, 1995, a Uniform Field Assignment Incentive of two percent of base salary (not pension-based) shall be paid to each eligible officer. See Appendices A-4, B-4, C-4, D-4 . . . [salary schedules].

"B. **Eligibility**

"1. Except as modified in Paragraph 2 below, an 'eligible officer' is any employee in this Unit, [Police Officers, Lieutenants and Below Representation Unit] during an applicable pay period, who has been assigned to a division or other organizational component which works in the field in uniform. 'Eligible officer' includes, but is not limited to, employees assigned to patrol; Metropolitan Division; traffic enforcement and collision investigation officers; CRASH officers; Air Support Division observers; uniformed officers assigned to the Prostitution Enforcement Detail; uniformed officers working a 'school car' or officers assigned to the 'J-Car' detail who wear uniforms exclusively, and others found by Management to be eligible for the incentive with the concurrence of the Police Protective League. An 'eligible officer' must be in one of the following ranks and paygrades or a successor rank and paygrade: Police Officer II or III, Sergeant I or II, or Lieutenant I or II.

"**Exception:** An employee in the rank and paygrades or a successor rank and paygrade of Detective I, II or III, is eligible to receive the incentive subject to the provisions of Paragraph 3 below.

" 'Field' refers to enforcement activity or other activity involving citizen contact.

"2. An otherwise eligible officer, loaned to a division or other organizational component who is not covered by that incentive, shall continue to receive the incentive for two deployment periods. The incentive shall not thereafter be paid until the officer resumes duties covered by the incentive.

"3. An employee in this Unit who is loaned for longer than two deployment periods to a division or other organizational component qualified for the Uniform Field Assignment Incentive shall receive the incentive until the loan is terminated and the employee returns to a nonqualifying assignment.

"C. **Payment**

"This incentive shall be paid on a biweekly basis for the time during which an employee was eligible. Such time shall include vacation, compensatory time, sick time and any paid leave during which the employee was eligible as a result of an assignment."

[3]"Article 1.7. **Provisions of Law and Separability**

*The Petition for Writ of Mandate*

Appellant Morgan requested the pension board to treat Incentive Pay as part of the final average salary for pension calculation purposes. Following denial by the board, Morgan filed a petition under Code of Civil Procedure section 1085, alleging on behalf of himself and all current and former members of the Plan who had received Incentive Pay that the board had a ministerial duty to include Incentive Pay in the pension base. The petition was apparently amended to include appellants Preciado and Jones as named plaintiffs.[4]

The petition was heard and denied on the ground that the unambiguous intention of the parties to the MOU, in adding additional compensation in the form of Incentive Pay, was that this compensation be excluded from the base from which pension benefits were calculated. This appeal ensued.

## APPELLANTS' CONTENTIONS

Appellants contend that: Incentive Pay constitutes Special Pay and/or Assignment Pay within the meaning of the Los Angeles City Charter; the charter requires inclusion of Special Pay and Assignment Pay in an officer's pension base; consequently, the MOU exclusion of Incentive Pay from pension base must be deleted under article 1.7 of the MOU, which requires severance of any MOU provision inconsistent with the city charter.

## DISCUSSION

A writ of mandate "may be issued by any court . . . to compel the performance of an act which the law specifically enjoins, as a duty resulting from an office, trust, or station . . . ." (Code Civ. Proc., § 1085.) To obtain issuance of a writ of mandamus under Code of Civil Procedure section 1085, the petitioner must demonstrate that there is no other plain, speedy, and adequate remedy, that the respondent has failed to act on a clear ministerial duty to do so, and that the petitioner has a clear right to such performance.

---

"This Memorandum of Understanding is subject to all current and future applicable Federal, State, and local laws, the City Charter, and any lawful rules and regulations enacted by the Civil Service Commission, or other similar independent commission of the City. If any Article, part, or provision of this Memorandum of Understanding is in conflict with or inconsistent with such applicable provisions of Federal, State, or local laws, or the Charter of the City of Los Angeles or is otherwise held to be invalid or unenforceable by any court of competent jurisdiction, said Article, part, or provision shall be suspended and superseded by such applicable law or regulations, and the remainder of this Memorandum of Understanding shall not be affected thereby."

[4] The operative pleading was not included in the appendix filed with this court.

(*Quirk v. Board of Education* (1988) 199 Cal.App.3d 729, 733 [244 Cal.Rptr. 924].) A ministerial act is one which a public officer is required to perform in a prescribed manner in obedience to the mandate of legal authority, without regard to his own judgement or opinion. (*Transdyn/Cresci JV v. City and County of San Francisco* (1999) 72 Cal.App.4th 746, 752 [85 Cal.Rptr.2d 512].) Mandamus is also available to "correct those acts and decisions of administrative agencies which are in violation of the law . . . ." (*Bodinson Mfg. Co. v. California E. Com.* (1941) 17 Cal.2d 321, 329 [109 P.2d 935].)

■ The interpretation of a contract is subject to de novo review where the interpretation does not turn on the credibility of extrinsic evidence. (*Sunniland Fruit, Inc. v. Verni* (1991) 233 Cal.App.3d 892, 898 [284 Cal.Rptr. 824].) The interpretation of statutes and regulations is similarly subject to de novo review. (*Carmona v. Division of Industrial Safety* (1975) 13 Cal.3d 303, 310 [118 Cal.Rptr. 473, 530 P.2d 161].)

■ With these principles in mind, we examine the MOU between the city and the league[5] and the charter provisions relied upon by the league.

*The Memorandum of Understanding*

The express language of article 5.4, subdivision (A) of the MOU states that Incentive Pay is not pension-based. ■ "A contract must be interpreted to give effect to the mutual, expressed intention of the parties. Where

[5]All references in this opinion will be to the July 31, 1996 MOU. Although this appeal addresses Incentive Pay, which appellants state was authorized by MOU from 1992 to the present, the record filed by appellants contains only one MOU, entered into July 31, 1996.

It appears, in any event, that the MOU provisions regarding Incentive Pay in the preceding MOU are identical to those discussed in this opinion.

Following oral argument, we requested that appellants file copies of city ordinances which they represented were ordinances enacting Incentive Pay.

Appellants filed Ordinance No. 170011, adopted by the city council August 24, 1994, and Ordinance No. 171242, adopted August 20, 1996. Both ordinances expressly state that their purpose is implementation of an MOU between the city's management representative and the Police Protective League, the police officer bargaining unit's representative.

Ordinance No. 170011, section 27, Uniform Field Assignment Incentive, is materially identical to article 5.4 of the July 31, 1996, MOU, except for the amount of Incentive Pay. The ordinance, which recites an agreement which commences July 1, 1992, unless otherwise specified, provides that:

"(a) Operative July 1, 1994, a Uniform Field Assignment Incentive of one (1) percent of base salary (not pension-based) shall be paid to each eligible officer.

"(b) Operative July 1, 1995, a Uniform Field Assignment Incentive of two (2) percent of base salary (not pension-based) shall be paid to each eligible officer."

Ordinance No. 171242, section 12, Uniform Field Assignment Incentive, states that: "Eligible unit employees assigned to uniform field duty shall receive incentive pay in accordance with provisions of Article 5.4 of the MOU."

the parties have reduced their agreement to writing, their mutual intention is to be determined, whenever possible, from the language of the writing alone." (*Ben-Zvi v. Edmar Co.* (1995) 40 Cal.App.4th 468, 473 [47 Cal.Rptr.2d 12].) The unambiguous intention of the parties to the MOU is that eligible police officers may receive Incentive Pay, a non-pension-based form of compensation.[6]

Appellants concede that Incentive Pay is not a pay category specified in the charter as contributing to a pension base. But they contend that Incentive Pay fits the charter definitions of Special Pay and Assignment Pay, both of which are pension-based under the charter. Appellants urge that the severability clause in article 1.7 of the MOU, applicable to any "Article, part, or provision" inconsistent or in conflict with existing law, must be applied to excise that part of article 5.4 which provides that Incentive Pay not be pension-based, but that the remainder of the article which creates the Incentive Pay must be retained. We are not persuaded.

 Having entered into a collective bargaining agreement, a party cannot retain that part of an agreement which creates a benefit, while rejecting a less favorable provision, such as limitations on that agreed-upon benefit. (*San Bernardino Public Employees Assn. v. City of Fontana* (1998) 67 Cal.App.4th 1215, 1224-1225 [79 Cal.Rptr.2d 634].) Assuming, as appellants suggest, that the non-pension-based designation of Incentive Pay in article 5.4 of the MOU is in conflict with the city charter, there is no support for appellants' argument that application of the severability clause should be limited to that part of article 5.4 which excludes Incentive Pay from the pension base. Appellants have not explained why article 1.7 would not require that the entirety of article 5.4 be severed and stricken.

Moreover, appellants' contention that MOU article 5.4 be retained in its entirety, except for the non-pension-based designation of Incentive Pay, is not supported by application of the three-part test used by courts in applying severability clauses to statutes. In analyzing severability clauses, courts first apply a mechanical test to determine whether language is grammatically severable, then look to whether the unexcised language is functionally complete and capable of separate enforcement. (*People's Advocate,*

---

[6]Although unnecessary to our determination, the intention of the parties to the MOU that this pay was not pension-based is supported by deposition testimony of a city bargaining team lieutenant, who testified that the league proposed that the Incentive Pay be pension-based, but the city rejected this proposal.

The Lieutenant testified that in 1994, consistent with Christopher Commission recommendations that the city develop incentives to motivate officers to perform patrol functions, the city had proposed Incentive Pay as a monetary incentive.

*Inc. v. Superior Court* (1986) 181 Cal.App.3d 316, 330-332 [226 Cal.Rptr. 640].) These two tests are met here. The third test requires that the " ' "remainder [must not only be] complete in itself [but] *would have been adopted by the legislative body had [it] foreseen the partial invalidation of the statute.*" ' . . . This test logically requires that the remaining provisions must be viewed from the perspective of the enacting body." (*Id.* at p. 332.) There is no evidence that the city council would have adopted the MOU containing Incentive Pay had the council foreseen that the MOU's designation of Incentive Pay as non-pension-based would have been invalidated. Consequently, we reject appellants' contention that designation of Incentive Pay as non-pension-based must be stricken.

*Charter Provisions*

We address the basic premise of appellants' appeal, that Incentive Pay, although not among the categories of pay listed in the city charter as contributing to pension base, is nonetheless pension-based under the charter, because it is equivalent to Special Pay and or Assignment Pay as defined in the charter.

An administrative agency's interpretation of a statute the agency is charged with implementing is entitled to great weight, and the agency's interpretation will be accepted unless clearly erroneous. (*American Federation of Labor v. Unemployment Ins. Appeals Bd.* (1996) 13 Cal.4th 1017, 1027 [56 Cal.Rptr.2d 109, 920 P.2d 1314].) It is uncontroverted that the pension board, the agency charged with implementing charter provisions governing appellants' retirement plans, regarded Incentive Pay as neither Special Pay nor Assignment Pay with respect to either contributions or benefits.

We agree with the board's interpretation.

*Special Pay*

Charter section 521, subdivision (p), which governs the Plan, and section 190.02, subdivision (q-2), which governs the system, define Special Pay as additional pay by reason of assignment to perform special duties other than hazardous duties, as provided by ordinance.[7]

Appellants argue Incentive Pay constitutes Special Pay because it is dependent upon an assignment to a unit whose primary function is to provide

---

[7]Charter section 521, subdivision (p), provides: ' "**Special Pay**' means any additional gross monthly pay which, by reason of assignment to perform special duties other than hazardous duties, shall be provided by ordinance."

Charter section 190.02, subdivision (q-2), provides: " 'Special Pay' means any additional gross monthly pay . . . which, by reason of assignment to perform special duties other than hazardous duties, shall be provided by ordinance, upon the conditions therein set forth, for the

services to the field in uniform, and these assignments are "special" under the dictionary definition as "distinguished by some unusual quality" or "favored." This proposed definition does not address the charter requirement that Special Pay be provided by ordinance.

There is no ordinance which provides that Special Pay is merited by assignment to units whose primary function involves uniformed field services. We are not persuaded by appellants' contention that the passage of an enabling ordinance that incorporated and implemented the provisions of the MOU constituted the enactment of an ordinance establishing Special Pay.

Furthermore, Special Pay assignments are listed in Los Angeles Administrative Code (LAAC) section 4.159, subdivision (g)(2),[8] and uniform field assignments are not included. Although LAAC section 4.159, subdivision (g)(3), makes provision for the designation of positions not listed to qualify for special or hazard pay,[9] Incentive Pay was never designated as such.

---

System Member's permanent rank as of the date of the termination of his status as a Department Member."

[8] LAAC section 4.159, subdivision (g)(2) states:

"The Chief of Police may assign persons in the following described classes and pay grades to those duties set forth hereinbelow. Members of the Police Department shall receive an additional increment of salary while so assigned in the amount set forth hereinafter. Such additional increment of salary shall be special pay or hazard pay, over and above the compensation attached to the class and pay grade, and shall be paid only while a person is so assigned.

"A. **Special Pay.**

"(a) A Policeman III, when assigned to any of the following positions, shall be compensated at the corresponding step of Schedule 4:

"i. Assistant squad leader, crime task force;

"ii. Court complaint officer;

"iii. Lawsuits and claims investigator;

"v. Senior lead officer, basic car plan;

"vi. Traffic follow-up investigator;

"vii. Vice coordinator;

"viii. Labor relations officer;

"ix. Senior lead officer, basic foot beat;

"(b) A Policewoman III, when assigned as the Internal Affairs Division administrative officer's assistant, shall be compensated at the corresponding step of Schedule 4."

[9] LAAC section 4.159, subdivision (3), provides: "Whenever the work program of a department requires the assignment of duties to an employee the nature of which qualifies him to receive adjusted compensation or pay, the [city administrative officer] may, upon review of the request of the appointing authority and by notification to the Controller, authorize payment of special or hazard pay in accordance with this section provided such assignment is on a program for a purpose previously authorized by Mayor and Council, and provided that in no event shall such authorization extend beyond the end of the fiscal year in which such authority is granted."

*Assignment Pay*

Assignment Pay is any additional gross monthly pay or one-twelfth of any additional gross annual pay which is provided by ordinance, for performance of special or hazardous duties, or duties in a higher class, position, grade, code or other title within the system member's permanent rank.[10]

Here again appellants argue that Incentive Pay should be regarded as Assignment Pay because it is assignment based and "favored." But there is no evidence that uniform field assignments meet the charter requirements under which Assignment Pay may be granted. While appellants contend that the MOU appendices show that the base pay of officers receiving Incentive Pay places them in higher pay categories than the lowest paid officers in the same rank, there is no competent evidence that these pay scales reflect a higher class, position, grade, code, or title within the officers' permanent rank. Again, we are not persuaded that adoption of an MOU is equivalent to "additional . . . pay . . . provided by ordinance."

Insofar as we find that Incentive Pay is not Special Pay or Assignment Pay within the meaning of the city charter, and that the MOU creating Incentive Pay expressly excludes this compensation from pension base, we decide the appeal solely on these issues, and do not reach other remedy-related issues raised by appellants.

## DISPOSITION

We find appellants failed to establish a clear ministerial duty on the part of the pension board to include uniform field assignment incentive pay in appellants' pension base and therefore we affirm the judgment of the trial court.

Boren, P. J., and Cooper, J., concurred.

Appellants' petition for review by the Supreme Court was denied March 28, 2001. Mosk, J., was of the opinion that the petition should be granted.

---

[10]Section 521, subdivision (r), provides: " **'Assignment Pay'** means any additional gross monthly pay which, by reason of assignment to perform special duties or hazardous duties, in a higher class, position, grade, code or other title than the lowest thereof within the Plan Member's permanent rank, shall be provided therefor by ordinance."

Section 190.02, subdivision (r-2), provides: " **'Assignment Pay'** means any additional gross monthly pay or $\frac{1}{12}$ of any additional gross annual pay which, by reason of assignment to perform special duties or hazardous duties; in a higher class, position, grade, code or other title than the lowest thereof within the System Member's permanent rank, shall be provided therefor by ordinance, upon the conditions therein set forth, as of the date of the termination of such System Member's status as a Department Member."