[No. C042816. Third Dist. Dec. 4, 2003.]

JAMES PELLANDINI, Plaintiff and Respondent, v.
CATHRYN PELLANDINI VALADAO, Defendant and Appellant.

1316

## COUNSEL

Donahue & Loving, Stephen J. Mackey, Christopher A. Lee and Laura E. Bainbridge for Defendant and Appellant.

Whitney F. Washburn and Wendy L. Benjamin for Plaintiff and Respondent.

## OPINION

**BLEASE, Acting P. J.**—Cathryn Pellandini Valadao appeals from a judgment for specific performance and declaratory relief entered after the trial court granted plaintiff James Pellandini's motion for summary adjudication.

The trial court determined that Pellandini's right of first refusal to purchase property owned by Valadao and her sister, Suzanne Wooldridge, as tenants in common, was triggered when Wooldridge gave Valadao a deed of her interest in the property in lieu of foreclosure after Wooldridge defaulted on a loan to Valadao secured by her interest.

We shall conclude that the deed in lieu of foreclosure did not trigger Pellandini's right of first refusal because Wooldridge's conveyance of her cotenant's undivided one-half interest in the property as satisfaction of a debt owed her cotenant did not constitute a "bona fide offer for purchase of the property" by a third party as provided in the parties' agreement.

Accordingly, we shall reverse the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Albert Pellandini, Sr. died in 1990, leaving 582 acres in trust to his grandchildren, consisting of four parcels. Three of the parcels were devised to James Pellandini. Half of parcel 4 was devised to James Pellandini, and the balance to James's cousins, Suzanne Wooldridge and Cathryn Valadao.

Since Albert Pellandini, Sr.'s, death, the parties and their parents have been involved in a series of court actions. As part of a consolidated settlement agreement, the parties agreed to the creation by partition of a new parcel equivalent to the interests of Wooldridge and Valadao in the fourth parcel. The agreement stated the new parcel would be transferred in "fee simple to Cathryn and Suzanne, or their designee, as tenants in common."

Pellandini, as trustee, agreed to pay the costs of partitioning parcel 4. In return, he was allowed to farm it during the then-current crop season. The agreement also provided: "The trustee [James Pellandini] will waive his right of first refusal on the property owned by Cathryn and Suzanne as granted in the trust as set forth in Paragraph One above. [¶] Cathryn and Suzanne will, however, give James Pellandini a right of first refusal to meet any bona fide offer for purchase of the property. [¶] The trustee shall cooperate in any efforts made by Cathryn and Suzanne to partition the interest which they hold as tenants in common distributed to them under Paragraph One so that they may each own their respective interests in fee simple."

The deed to Wooldridge and Valadao as tenants in common was recorded on March 18, 1999. Thereafter, Wooldridge conveyed her interest in parcel 4 to herself and her husband as community property. On April 9, 1999, Wooldridge and her husband signed a promissory note in favor of Valadao in the sum of $163,000. The note was secured by a deed of trust on their interest in parcel 4.

Wooldridge and her husband were to commence monthly payments of $1,500 on April 9, 1999. In fact, they made only two payments of $2,500 each—one on July 10, 1999, and one on March 10, 2000. On April 19, 2000, the Wooldridges gave Valadao a deed in lieu of foreclosure for parcel 4. The deed was recorded on May 2, 2000.

When Pellandini discovered the transfer from the Wooldridges to Valadao in June 2000, he demanded the opportunity to purchase Suzanne Wooldridge's interest for the same consideration paid by Valadao. Valadao refused.

Pellandini filed this action in March 2001 demanding specific enforcement of the right of first refusal contained in a clause in the settlement agreement as well as damages for breach of contract, breach of the covenant of good faith and fair dealing, fraud, negligent misrepresentation, and conspiracy. He alleged Suzanne Wooldridge and Valadao breached the settlement agreement by conveying Suzanne's interest in parcel 4 to her cotenant Valadao without first offering him the opportunity to purchase the property for the same consideration paid by Valadao.

Valadao moved for summary judgment or summary adjudication.[1] Pellandini filed a cross motion for summary judgment or summary adjudication. The trial court granted Valadao's motion as to the conspiracy cause of action, but denied the motion as to all other causes of action.

The trial court denied Pellandini's motion for summary adjudication as to the breach of the covenant of good faith and fair dealing, fraud, negligent misrepresentation, and conspiracy causes of action, but granted his motion as to the specific performance cause of action and the declaratory relief cause of action as it related to the claim for specific performance. The trial court found the breach of contract claim moot in light of the ruling on specific performance.

The trial court reasoned a transfer by deed in lieu of foreclosure would "effectively nullify any right of first refusal." Accordingly, the trial court found the "deed in lieu of foreclosure [was] a bona fide offer for purchase that triggered [Pellandini's] right of first refusal."

Subsequent to the trial court's order granting summary adjudication, Pellandini and Valadao stipulated to entry of judgment in favor of Pellandini for specific performance and declaratory relief. Pellandini agreed to dismiss the remaining causes of action without prejudice.

---

[1] The Wooldridges filed a petition in bankruptcy on May 14, 2002, thereby staying this action against Suzanne Wooldridge.

## DISCUSSION

█ Summary judgment is subject to independent review on appeal. Furthermore, the " 'interpretation of a contract is subject to de novo review where the interpretation does not turn on the credibility of extrinsic evidence.' [Citations.]" (*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2003) 107 Cal.App.4th 516, 520 [132 Cal.Rptr.2d 151], quoting *Morgan v. City of Los Angeles Bd. of Pension Comrs.* (2000) 85 Cal.App.4th 836, 843 [102 Cal.Rptr.2d 468].)

The trial court focused on the voluntary nature of the deed given in lieu of foreclosure in deciding the right of first refusal was triggered by the conveyance. In *Campbell v. Alger* (1999) 71 Cal.App.4th 200, 206–207 [83 Cal.Rptr.2d 696], the court stated that a right of first refusal becomes an option to purchase when the owner, "voluntarily decides to sell the property and receives a bona fide offer to purchase it from a third party." *Campbell* held that a taking of property by eminent domain did not trigger a right of first refusal because the owners did not voluntarily offer the property for sale. (*Id.* at p. 208.) Following this rationale, the trial court found Wooldridge's decision to sign a deed in lieu of foreclosure was a voluntary act triggering Pellandini's right of first refusal. The court's decision was also based on the view that any party could easily nullify a right of first refusal by orchestrating a sham loan, default, and deed in lieu of foreclosure transaction.

█ While we agree that a deed in lieu of foreclosure could in some circumstances be used to circumvent a right of first refusal, we conclude the right of first refusal was not triggered in this case because there was no transfer of an interest in the property to a third person.

No published California case has considered whether a sale of property between co-owners triggers a right of first refusal. A handful of cases in other jurisdictions have considered the issue. The weight of authority in these jurisdictions supports our conclusion.

In *Prince v. Elm Investment Co., Inc.* (Utah 1982) 649 P.2d 820, the Utah Supreme Court considered a right of first refusal contained in a clause in a lease agreement. The lease agreement provided the tenant had a right to purchase the property if the lessor offered the property for sale during the term of the lease. (*Id.* at p. 821.) The court concluded the right was triggered when the lessor conveyed the leased property to a partnership in which it held a 51 percent interest. (*Ibid.*) The court reasoned that "for purposes of a right of first refusal, a 'sale' occurs upon the transfer (a) for value (b) of a significant interest in the subject property (c) to a stranger to the lease, (d) who thereby gains substantial control over the leased property." (*Id.* at p. 823.)

In *Baker v. McCarthy* (1982) 122 N.H. 171 [443 A.2d 138], the Supreme Court of New Hampshire concluded a right of first refusal was not triggered by the conveyance by two tenants in common to the third tenant in common. The right was contained in a deed from the grantors to the grantee, which stated in pertinent part: "in the event the said Grantors, . . . shall at any time receive an offer of purchase . . . they shall first offer [the property] to the said Grantee . . . ." (*Id.* at p. 140.)

The court interpreted the reference to the grantors in the plural as contemplating "that an offer to purchase would be made by a third party to the grantors as a whole group. . . . Nowhere in the clause of first refusal does the language 'the grantors or any of them' or 'any individual grantor' appear. A sale to a third party by all of the grantors was clearly intended, and the plaintiff's right of refusal was not intended to be used to make the plaintiff a tenant in common with any of the grantors." (*Baker v. McCarthy, supra,* 443 A.2d at p. 141.) The court reasoned that a transfer among the grantors did not add a third party "to the ownership picture who would adversely affect the plaintiff's rights contemplated by the provisions of her deed." (*Ibid.*)

In *Koella v. McHargue* (Tenn.Ct.App. 1998) 976 S.W.2d 658, a Tennessee appellate court concluded a right of first refusal contained in a deed was not triggered where one tenant in common sold his undivided one-half interest in the property to the other tenant in common. The deed provided in pertinent part: "THE GRANTORS herein do hereby grant unto the Grantees a right of first refusal for said 88.80 acre tract of property . . . . In the event the Grantors shall decide to sell all or any of said 88.80 acre tract, Grantors shall give written notice . . . at what price said property shall be placed on the open market and the Grantees shall have 15 days to purchase said property . . . ." (*Id.* at p. 660.) The court noted that the deed referred to the grantors in the plural, and that it required the property to be placed on the open market. (*Ibid.*) The court concluded the deed did not contemplate a private sale between cotenants. (*Ibid.*)

In *Byron Material, Inc. v. Ashelford* (1975) 34 Ill.App.3d 301 [339 N.E.2d 26], an Illinois appellate court held that a transfer of an undivided one-half interest in leased property from one tenant in common to another tenant in common was not a sale to a bona fide purchaser within the meaning of a lease's right of first refusal clause. The lease agreement recited that the lessors, who were described as the "Party of the First Part" granted to the lessee, who was the "Party of the Second Part" "an option . . . to purchase all of the premises covered by this lease at the same terms and conditions as offered by any bona fide purchaser . . . ." (*Id.* 339 N.E.2d at p. 27.) The court found that the term "Party of the First Part" included all of the lessors, therefore the transfer of title between members of the "Party of the First Part" did not

constitute a bona fide sale. (*Id.* at p. 29.) The court reasoned that the lessee "neither gained nor lost by this transfer . . . ." (*Ibid.*)

In *Wilson v. Grey* (Ky. 1978) 560 S.W.2d 561, the Supreme Court of Kentucky held that a sale from one co-owner to another did not trigger the right of first refusal clause in a lease agreement. The agreement stated in pertinent part: "Should lessor ever desire to sell the leased premises lessees are given the right to purchase the same at the price which lessor has been offered for the premises." (*Ibid.*) When the original lessor died, the premises were inherited by her sons and daughter-in-law. (*Ibid.*) One son sold his interest to the other son. (*Ibid.*) The court reasoned that when the lease was executed there was only one lessor, and that a sale could only be made to someone other than the lessor. When the lessor died, her heirs became the collective lessor, and a sale from one to the other was not a sale to a person other than the lessor. (*Id.* at p. 562.)

Finally, in *Rogers v. Neiman* (1971) 187 Neb. 582 [193 N.W.2d 266], the Nebraska Supreme Court held that a sale of interests between tenants in common did not trigger the right of first refusal clause in a lease. The lessors were tenants in common, and the lease contained a provision that the lessee would have an option to purchase the premises in the event "the lessors shall place the premises up for sale." (193 N.W.2d at p. [267].) The court stated that "the proper construction of the lease was that an option existed only if the entire property was offered for sale by all of the lessors." (*Id.* at p. 267.)

Pellandini has cited the sole case in which a court decided a transfer from one cotenant to another triggered the right of first refusal clause, and that case is distinguishable on its facts. In *Meyer v. Warner* (1968) 104 Ariz. 44 [448 P.2d 394], the Arizona Supreme Court considered the following clause in a lease agreement: "The LESSORS give the LESSEES the first refusal to purchase the demised property, should they decide to sell same during the term of this lease . . . . They will meet any price and terms of a bonafi[de] offer to lessors to sell." (*Id.* at pp. 395–396.) Subsequently, the lessor conveyed an undivided one-half interest in the property to a third party, Mr. and Mrs. Meyer. (*Id.* at p. 396.) The lessees received notice of the transfer after the fact, but did not attempt to assert their right under the first refusal clause. (*Id.* at p. 397.) Later, upon the death of Mr. Meyer, the original lessor sold his remaining one-half interest to Mrs. Meyer. (*Id.* at p. 396.) When the lessees learned of this conveyance, they asserted their right to purchase the property. (*Ibid.*) The Arizona court held the defense of laches barred specific performance as to the first transfer of an undivided one-half interest to the Meyers. (*Id.* at pp. 397–398.) However, the court concluded the sale of the second one-half interest was a sale for purposes of the right of first refusal, even though the transfer had been made as a gesture of friendship. (*Id.* at p. 398.)

The Arizona case is distinguishable because the sale of the second one-half interest was a sale to a third party, a stranger to the original lease, which contained the right of first refusal.

Two separate rationales emerge from the foregoing cases. ■ A bona fide sale occurs when the entire interest in the property is sold. A bona fide sale occurs when an interest in the property is sold to a third party.

In the present case the agreement referred to both Wooldridge and Valadao in the conjunctive, rather than the disjunctive. Additionally, the property was referred to in the singular, and no mention was made of a sale of either co-owner's interest in the property, as opposed to the property as a whole. This wording, together with the phrase "bona fide offer for purchase" indicates the right of first refusal was intended to be triggered by a sale of Wooldridge's and Valadao's combined interest to a third party. The agreement could have, but did not state, that the sisters would give Pellandini a right of first refusal to meet any bona fide offer for the purchase of either or both of their interests in the property to a third person or to each other. Similarly, in *Baker v. McCarthy, supra,* 443 A.2d 138 and *Koella v. McHargue, supra,* 976 S.W.2d 658 the agreements referred to grantors in the plural, contemplating that the right of first refusal would only operate upon a sale by all grantors to a third party.

As in *Byron Material, Inc. v. Ashelford, supra,* 339 N.E.2d 26, Pellandini loses nothing by a transfer between Wooldridge and Valadao. Such a transfer does no harm to Pellandini's interest, and his right of first refusal remains intact.

■ We agree with the Utah Supreme Court that unless the agreement provides otherwise, a bona fide sale for purposes of a right of first refusal does not occur unless there is a transfer for value to a third party. (*Prince v. Elm Investment Co., Inc., supra,* 649 P.2d 820.) California has recognized that a right of first refusal is a "preemptive right to purchase property on the terms and conditions of an offer to purchase by a third person." (*C. Robert Nattress & Associates v. Cidco* (1986) 184 Cal.App.3d 55, 66 [229 Cal.Rptr. 33].) There was no sale to a third party in this case. Accordingly, Pellandini's right of first refusal was not triggered.

## DISPOSITION

The judgment is reversed. Costs shall be awarded to appellant.

Nicholson, J, and Morrison, J., concurred.