United States Court of Appeals
Fifth Circuit

**F I L E D**

July 19, 2004

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT

_____

No. 03-60885

_____


WILLIAM J. POWERS, JR.,

Plaintiff-Appellant,

versus

LITTON INDUSTRIES, INC.; and
NORTHROP GRUMMAN SYSTEMS CORPORATION,

Defendants-Appellees.

_____

Appeal from United States District Court
for the Southern District of Mississippi
USDC No. 1:01cv286GR

_____

Before SMITH, PRADO, and PICKERING, Circuit Judges.

PER CURIAM:[*]

   This appeal concerns the interpretation of certain stock option agreements which were cancelled by Litton Industries, Inc., Powers' former employer, after his retirement from that company. The district court granted summary judgment in favor of Litton/Northrop Grumman. Finding no error, we Affirm.

   William J. Powers, Jr., ("Powers") retired from Litton Industries, Inc., ("Litton") holding certain vested and unvested/unexercised stock options. Shortly after his retirement, Litton sent Powers a memorandum detailing the number of unvested and unexercised options he owned and notifying him that 7,700 of the options had been "cancelled" under a Termination of Exercise

_____

   [*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Rights contained in the option agreements. Powers took no action at that time to clarify his rights.

Approximately one year later, Northrop Grumman Systems Corporation ("Northrop") purchased Litton. A "Change in Control" clause in the option agreements provided that in the event of a corporate change in control, certain unexercised options would become exercisable. Powers requested Litton to allow him to exercise the 7,700 options which had been cancelled. Litton refused and this litigation ensued. On summary judgment review, the district court concluded that Litton had properly cancelled the 7,700 options and granted summary judgment for Defendants and against Powers.

Review of the district court's grant of summary judgment is *de novo* using the same standards as the lower court. *See Russell v. McKinney Hosp. Venture*, 235 F.3d 219 (5th Cir. 2000). Summary judgment should be granted only when there is "no genuine issue as to any material fact[.]" Fed. R. Civ. P. 56 (c); *Wyatt v. Hunt Plywood Co.*, 297 F.3d 405, 408-09 (5th Cir. 2002).

The parties agree that the stock option agreements contained an enforceable choice of law provision specifying that California law governs this dispute. Under California law, when extrinsic evidence is not at issue, the interpretation of a contract is a question of law reviewed *de novo*. *Pellandini v. Valadao*, 113 Cal. App. 4th 1315, 7 Cal. Rptr. 3d 413, 415, (Cal. App. Ct. 2003). Further, stock option agreements are interpreted using the normal rules of contract interpretation. *See Oracle Corp. v. Falotti*, 187 F. Supp. 2d 1184, 1193 (N.D. Cal. 2001)(*citing Scribner v. Worldcom, Inc.,* 249 F.3d 902, 907 (9th Cir. 2001)). If contractual language is clear and explicit, that language governs. *Vargas v. Athena Assurance Co.*, 95 Cal. App. 4th 461, 465,

115 Cal. Rptr. 2d 426, 429 (Cal. Ct. App. 2001).

Each of the option agreements, in varying language, contained a termination provision in the event the holder ceased to be an employee for any reason other than death.[1]  Section 11 of the Litton Long-Term Stock Incentive Plan (the "Plan") contained a termination provision which applied in the event a holder of options ceased employment for any reason other than death, disability or retirement.  Each of the option agreements contained a provision that in the event of an express conflict between the option agreement and the Plan, the Plan would control. Thus, Powers' only viable argument on appeal is that the termination provision in each of the option agreements conflicts with the termination provision contained in Section 11 of the Plan, or that such is ambiguous.

This court, having carefully reviewed the language of the Plan and the option agreements, finds that there is no ambiguity in Section 11 of the Plan, nor does it conflict with the termination provisions contained in each of the option agreements.  Specifically, that part of Section 11 of the Plan applicable in this case provides: "if a Grantee incurs a termination of employment for any reason other than death, disability or retirement, any Stock Option held by such Grantee shall thereupon terminate. . ."  (Emphasis added).  Thus, Section 11 itself terminates stock options of all employees except retirees and employees who die or become disabled while employed.  This is a termination provision in addition to the termination provisions found in each stock option agreement.

While it is true that Section 11 of the Plan excepts from termination stock options of any

---

[1]  The option agreements contained other saving language in the event the holder retired after age 62 or 65 while still an employee.  For purposes of this appeal, those provisions have no application.

3

holder who ceases employment because of death, disability or retirement, there is no positive statement in that Section, or elsewhere in the Plan, that conflicts with the termination provisions found in the separate stock option agreements. Section 11 of the Plan, as it applies to the facts of this case, simply exempts the stock options of a retiree from the termination provision of Section 11 itself, but it does not give a retiree any affirmative rights, nor preclude termination by the express provisions of the stock options themselves. Consequently there is no conflict, express or otherwise, between Section 11 of the Plan and the termination provisions contained in the stock option agreements. The district court, therefore, properly concluded that Litton was within its contractual rights when it cancelled the 7,700 stock options.

Powers contends that Litton breached its duty of good faith and fair dealing in cancelling the options and its review of that decision. Under California law, all contracts impose a duty of good faith and fair dealing upon each party. *See Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*, 100 Cal. App. 4th 44, 55, 122 Cal. Rptr 2d 267 (Cal. App. Ct. 2002). However, that implied duty cannot be found to contradict the express terms of the contract. *Id. (citing Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*, 2 Cal. 4th 342, 374, 826 P. 2d 710 (Cal. 1992)). The district court correctly found that the express terms of the stock option agreements properly allowed Litton to cancel them in the manner in which it did. Thus, there can be no breach of the duty of good faith and fair dealing in the initial decision to cancel the options.

Finally, Powers contends that Litton breached its duty of good faith and fair dealing by improperly allowing only one executive to review the decision to cancel the stock options as opposed to the Plan's requirement that such a review be performed by the Compensation Committee of the Litton Board of Directors. Powers is correct that this was a violation of the

4

procedural rules of the Plan. Also, we recognize that the district court failed to specifically address this issue.[2] However, that is of no consequence, because it was incumbent upon Powers to show that he was damaged by the decision in order to prove a claim based on the theory of a breach of the duty of good faith and fair dealing. *See, e.g., Gourley v. State Farm Mut. Auto Ins. Co.*, 53 Cal. App. 3d 121, 129, 822 P. 2d 374 (Cal. 1991). Since the district court correctly found that the stock option agreements unambiguously allowed Litton to cancel the stock options upon Powers' retirement, Powers failed to show that the improper review caused him damage.

While Defendants might not have responded to a long term employee as they could have, or as he felt they should have, that is no basis for the Court to rewrite the contracts between the parties. The termination provisions in the stock option agreements control.

Finding no error in the district court's judgment of dismissal in favor of Litton/Northrop, WE AFFIRM.

---

[2] This failure does not affect the finality of the district court's judgment nor this court's jurisdiction as it is clear that the district court intended to effect a final judgment dismissing all claims. *See, e.g., Moreau v. Harris County*, 158 F.3d 241, 244 (5th Cir. 1998).